THE PEOPLE OF THE STATE OF NEW YORK ex rel. MORRIS ESKENAZI, Relator, against DAVID CORCORAN, as Senior Director of Central Islip State Hospital, Defendant.

Supreme Court, Special Term, Suffolk County, June 10, 1949.

*Louis Okin* for relator.

*Nathaniel L. Goldstein, Attorney-General (Norman M. Beck* of counsel), for defendant.

*Herman L. Weiss* for Sylvia Eskenazi.

COLDEN, J. This is a writ of habeas corpus, brought by relator to obtain the release of his brother, Jack Eskenazi, who is presently a patient at Central Islip State Hospital where he was committed on August 11, 1948, for treatment under a diagnosis of dementia praecox, paranoiac type. At the time of his commitment the examining psychiatrists were of the opinion that his illness made him likely to injure himself and others.

At the hearing on this writ the patient appeared to be normal, well oriented, frank in his answers and quiet and co-operative in demeanor. On behalf of the patient, the relator presented the testimony of Dr. Max Weissman, a psychiatrist of more than twenty-five years' experience, presently a senior psychiatrist at Kings County Hospital and associate professor of psychiatry at Long Island College Hospital. In February of this year Dr. Weissman examined the patient and at the trial testified that the " dementia praecox, paranoid type [has] disappeared, there was an excellent remission, and in such an excellent remission, it is very hard to know what the patient had before such a thing." Dr. Weissman then gave the following testimony: Q. " Would you say that in your opinion the patient is of any danger to himself? " A. " No." Q. " Would you say that the patient is of any danger to any other person? " A. " No." Q. " In your opinion, would you recommend that he be discharged from Central Islip, the mental institution where he is now committed? " A. " Yes, I would recommend it for the following reasons: to keep somebody in a state hospital if he is a danger to himself or others, or if he needs care and treatment, but he doesn't need any care and treatment because he doesn't even get care and treatment. He gets care, no treatment. Therefore, he does not need any treatment and he is no danger, in my opinion, and therefore, I think it is right to discharge him." In answer to the question, " Would you say that today Jack

Eskenazi is on the same level as any normal person?'' Dr. Weissman replied '' Yes, Yes.'' The doctor further testified that the patient could renew his usual occupation as a barber with safety to himself and to others. Dr. Weissman was subjected to extensive examination and the general purpose of his testimony is to the effect that the patient should be released from further custodial care at the hospital.

The defendant called as a witness Dr. Harry Bittle, a supervising psychiatrist at Central Islip State Hospital. Dr. Bittle testified that the patient does not require further hospitalization but is continued as a patient at the hospital because his wife objects to his release.

The defendant called also Dr. Albert M. Biglan, assistant director of the Central Islip State Hospital. Referring to the patient, Dr. Biglan testified, '' I and the staff of the hospital concur that he is not harmful to himself or to others, and should leave the hospital, but we held this in abeyance because his wife objected to his release.'' Dr. Biglan stated, '' My opinion is that it is more of a matrimonial problem than it is a psychiatric problem. In other words, the fear that he has engendered is mostly prompted by his matrimonial relationship. I asked the wife, if we could see fit to legally grant a separation, would she still maintain her statements about her fear of her husband, and she said ' No '.'' Dr. Biglan was then asked, '' In your capacity as assistant in charge of releases, if it had not been for Mrs. Eskenazi's objection, you would have placed him on convalescent status.'' To which Dr. Biglan replied, '' That is right.''

Referring to this patient Dr. Biglan stated, '' He is not recovered, he is much improved. We consider him much improved and his wife, who is his nearest relative, objects, and it is the policy of the hospital to retain him in the hospital.'' Dr. Biglan's testimony was then as follows:

'' Q. How long has that policy, so far as you know, Doctor, been in vogue?

'' A. Since I have been at the hospital.

'' Q. Have you had occasion to see and exercise it in other cases?

'' A. Several cases.

'' Q. How many people would you say in the hospital today, who were it not that a protest has been made by somebody, some relative, would have been paroled?

'' A. Possibly 25 or 50 patients.

'' Q. They are being retained there, and I presume may be retained for the rest of their lives?

" A. That is right."

Dr. Biglan then gave emphasis to his opinion that if the patient and his wife were legally matrimonially separated, the release of this patient would be approved. Part of his testimony follows:

" Q. In other words, if they would enter into a legal separation, you would have no hesitancy in returning him.

" A. That is right.

" Q. Under parole?

" A. Yes, and I don't think the wife would have any objection if a legal separation were granted. I believe there would be no objection to his being released."

Thus we have a situation where three psychiatrists of high standing in their profession agree that the patient has sufficiently recovered from his illness to a degree that warrants his release from confinement in the hospital. All are agreed upon the advisability of his return to a normal way of life, including his usual occupation. The sole barrier to his release is the objection interposed by his wife who, at the direction of the court, was produced as a witness. The suggestion of Dr. Biglan with reference to a legal separation is probably well founded, but this patient should not be required to enter into such an agreement as a condition precedent to his release from possible life confinement in the hospital.

Section 87 of the Mental Hygiene Law gives the director of a State hospital abundant authority to release this patient on parole under convalescent status. According to the testimony of the members of his staff, the only reason he has not done so is that the patient's wife objects. According to the testimony recited above, this patient may be detained as long as his wife objects — possibly for the rest of his life. Inasmuch as no certificate was issued by the director as contemplated in subdivision 3 of section 87 of the Mental Hygiene Law, this court cannot invoke the remedy therein provided. On the other hand, to detain a patient possibly for life to satisfy his wife's objections to his release, would not seem in keeping with our belief in the right of the individual to personal dignity and freedom. The testimony of all of the psychiatrists indicates that parole of this patient to the relator on convalescent status is much to be desired, but unless he is so released within five days after the service of the order to be entered hereon, then the writ will be sustained in its entirety and the patient Jack Eskenazi discharged from custody of the defendant.

Submit order.