483 P.2d 924

**Ruth GLASCO, Plaintiff-Respondent,**

v.

**Elinora BRASSARD, Defendant-Appellant.**

No. 10653.

Supreme Court of Idaho.

April 8, 1971.

Robert M. Robson, Atty. Gen., Dwight V. Board, Asst. Atty. Gen., Boise, for defendant-appellant.

Thomas A. Mitchell, Coeur d'Alene, for plaintiff-respondent.

McFADDEN, Justice.

This habeas corpus proceeding was instituted by Ruth Glasco (referred to herein as respondent) against Elinora Brassard, a

designated examiner [1] of the Idaho State Department of Health, the appellant herein. This proceeding was instituted the day following entry of an order of commitment by the probate court of Kootenai County, where that court found Ruth Glasco, respondent herein, to be a person "mentally ill and because of said illness is likely to inflict self injury or injury to others if allowed to remain at liberty, and said patient is in need of custody, care and treatment in a mental hospital or treated by State Board of Health, and now lacks sufficient insight or capacity to make responsible decisions with respect to said hospitalization." (I.C. § 66–329 as amended.)

The trial court in its order, the subject of this appeal, held that the commitment order of the probate court was not an appealable order and that the commitment procedure for mentally ill persons as provided by I.C. § 66–329 as amended is invalid. The trial court held that the statute purported to grant judicial functions to an administrative board, i. e., the State Board of Health, without providing judicial review, in violation of the patient's constitutional rights of due process. The trial court made the writ of habeas corpus permanent with directions to return the respondent to the probate court of Kootenai County for proceedings pursuant to I.C. § 66–329 as that section read prior to the attempted amendment thereof by S.L.1969, Ch. 143.

Appeal was perfected from this order of the district court by Elinora Brassard.

Certain facts before the district court were stipulated, which facts and others disclosed by the record are summarized as follows.

A petition was filed in the probate court of Kootenai County against Mrs. Ruth Glasco, alleging her to be mentally ill and in need of custodial treatment, and alleging that she was likely to inflict injury upon herself or others if allowed to remain in her own home. That court appointed counsel to represent her. A hearing was held before that court on August 7, 1969, Mrs. Glasco being present and represented by her appointed counsel. At the hearing, reports of two designated examiners were submitted to the court, each of which found that Mrs. Glasco was mentally ill. The probate court found the patient to be mentally ill and ordered that she be committed to the State Board of Health and remanded to the custody of Elinora Brassard, the designee of the Board of Health, who was also the director of the State Hospital North at Orofino. No mention was made in the commitment order as to the duration of the commitment.

The issue on this appeal is whether the 1969 amendment of I.C. § 66–329(h) [2] is constitutionally unacceptable. Briefly, I.C.

---

1. I.C. § 66–317(g). "Designated examiner" means any licensed physician or person designated by the state board of health as specially qualified by training or experience in the diagnosis of mental or related illness. Such persons shall be psychiatrists, clinical psychologists, neurologists, physicians or surgeons.

2. S.L.1969, Ch. 143 § 1(h). If, upon completion of the hearing and consideration of the record, the court finds that the proposed patient

(1) is mentally ill or mentally retarded or mentally deficient, and

(2) is, because of his ailment, likely to injure himself or others if allowed to remain at liberty, or

(3) is in need of custody, care or treatment and, because of his ailment, lacks sufficient insight or capacity to make responsible decisions with respect to his ailment, it shall order his commitment to the state board of health who through its designated examiners shall determine disposition of each proposed patient for observation, care, treatment and evaluation for an indeterminate period or for a temporary observational period not exceeding six (6) months; otherwise, it shall dismiss the proceedings. If the commitment is for a temporary period the court may at any time prior to the expiration of such period, on the basis of the report by the state board of health or its designated representative and such further inquiry as it may deem appropriate, order indeterminate commitment of the patient or dismissal of the proceedings.

§ 66–329 provides for the filing of an application with the probate court for the involuntary care and treatment of a mentally deficient, mentally retarded or mentally ill person. The application is to be accompanied by a certificate of a designated examiner (physician, psychiatrist, etc.) that the examiner has examined the proposed patient and is of the opinion that such person is mentally ill and should be hospitalized. The statute provides procedures for those proposed patients who refused to submit to the examination. After receipt of the application in due form with the examiners' reports the court is to set the cause for hearing within 15 days, serving notice on the patient or his guardian, and the court is required to afford counsel to represent the proposed patient. The court is then required to conduct a hearing on the issues and receive all relevant and material evidence. The court after the hearing is required to determine whether (1) the proposed patient is mentally ill, mentally retarded or mentally deficient, and, (2) is, because of his ailment, likely to injure himself or others if allowed to remain at liberty, or, (3) is in need of custody, care or treatment and because of his ailment lacks sufficient insight or capacity to make responsible decisions with respect to his ailment.

In the event the facts before the court fail to sustain the allegations of the applicant, the proceedings are dismissed. However, should sufficient facts be presented the court "shall order his commitment to the state board of health who through its designated examiners shall determine disposition of each proposed patient for observation, care, treatment and evaluation for an indeterminate period or for a temporary observational period not exceeding six (6) months."

Thus, under the provisions of this statute, the commitment procedures break down into two parts, first the judicial, and secondly, the treatment. It is the function of the trial court to initially determine whether the proposed patient is in need of treatment, and if that determination is made, then the patient is committed to the State Board of Health (for an indeterminate period or a six month temporary observational period). After the commitment to the State Board of Health is made, then the second step in the process is commenced. The State Board of Health must then accept the patient for observation, care, treatment and evaluation. Once the court has made the determination that the patient needs treatment, its role is accomplished, and the patient becomes the responsibility of the State Board of Health. Insofar as the patient is concerned, this procedure breaks down into two separate areas, one the judicial and the other the treatment.

Once a patient is committed, I.C. § 66–343 affords another opportunity for the probate court again to exercise its control. This section provides a patient (or his guardian, parent or spouse) may petition the probate court for further evaluation. Moreover, I.C. § 66–347 recognizes the right of an individual to petition the district court for a writ of habeas corpus.

Thus, safeguards are provided whereby a patient may subsequently receive consideration by the courts as to the validity of his confinement by a re-examination of his mental condition after treatment is once commenced. Soderquist v. Keller, 21 Wash.2d 1, 149 P.2d 528 (1944); People ex rel. Eskenazi v. Corcoran, 195 Misc. 340, 89 N.Y.S.2d 769 (1949); 39 Am. Jur.2d Habeas Corpus § 87, p. 241. These safeguards insure the patient is receiving treatment required of the State Board of Health under I.C. § 66–329(h) (3). See Rouse v. Cameron, 125 U.S.App. D.C. 366, 373 F.2d 451 (1966).

The district court was seriously concerned with the lack of judicial review of the "disposition" by the Board of Health following commitment of a patient to it. The disposition mentioned in I.C. § 66–329(h) (3) refers to locations of the hospital where the patient is to be sent for treatment, and disposition as used therein also refers to possible assignment to outpatient treatment centers and facilities and

programs administered by the Board of Health.

■ The decision of the Board of Health does not lend itself to an analogy of an administrative hearing with possible resulting penalties which requires judicial review. It is not the province of the courts to interfere with a medical determination as to the type or mode of treatment a particular patient is to receive. The court maintains an interest in insuring that its original commitment order is carried out by having the patient treated towards the goal of his recovery and release. The courts do not have the facilities to review the decisions of the medical, psychiatric and psychological personnel relative to the mode of treatment or location of facilities to administer the treatment.

The trial court's concern as to judicial review of the determination by the Board of Health as to the patient's welfare in our opinion is unfounded.

■ Respondent in support of her position as to the unconstitutionality of the present act points out that the trial court was of the opinion that there was no available review of the probate court's order of commitment. The trial court in a memorandum opinion pointed out that commitment proceedings neither fit into the criminal or civil categories of law, and hence there was no appellate procedure available for review of the probate court's determination. This commitment procedure is one governed by statute (I.C. § 66–329). However, it is our conclusion that it is in fact of a civil nature and hence is governed by the appellate provisions of I.C. § 17–101. See: State v. Bombino, 84 Idaho 554, 374 P.2d 854 (1962). See also I.C. § 1–705, which provides in pertinent part: "The district court has original jurisdiction: * * * Its appellate jurisdiction extends to all cases arising in probate or justices' courts * * *."

In State v. Noble, 52 Idaho 782, 20 P.2d 447 (1933), it was held that no appeal lies from a commitment of an individual as an inebriate to a state hospital, since such commitment is not a "final judgment," and the legislature has not provided for appeal in such proceeding. However, in State v. Bombino, supra, this court held that an order of commitment by a probate court of a child to an aid society was an appealable order covered by I.C. § 17–101. The court noted that the commitment order conclusively and finally determined the status of the child, and determined all issues presented or which could have been presented at the hearing before the order was issued. In *Bombino* the statutes governing removal of a child from its parents did provide for an appeal from the probate court order, but the court in considering the issues determined the case on the question of whether the probate court's order was a final order. The reasoning of *Bombino* is applicable to the facts here. Therein this court stated:

"The order of commitment was a final judgment and appealable. It conclusively and finally determined the status of the child; concluded all rights of the parents in respect to its care and disposition; and vested complete authority and control over the child in the Society. It was a final determination of all issues presented or which might have been presented at the hearing, subject only to review by the district court on appeal. * * *." 84 Idaho at 557, 8, 374 P.2d at 855.

In this instant case, the status of the patient was finally determined by the probate court, and by the order of that court authority and control was vested in the Board of Health. Insofar as State v. Noble, supra, is in conflict with this conclusion, it is overruled.

■ The initial commitment hearing before the probate court is vital to the whole process.[3] Under the statute in question, there is no lack of "due process" in the judicial phase of these proceedings. The pa-

---

3. After January 11, 1971 the probate court was eliminated and jurisdiction in this type of case placed in the district court. S.L.1969, Ch. 100, § 1. I.C. § 1–103.

tient is afforded right to counsel, right to be present, the right to present evidence and examine witnesses, with right to appeal from the determination by the court.

The respondent while under the authority of the Board of Health has access to the courts by way of the writ of habeas corpus, and thus lack of explicit provision for administrative review in the commitment statute is not fatal.

The order of the district court making permanent the writ of habeas corpus and holding I.C. § 66–329 (as amended by S.L. 1969, Ch. 143, § 1) to be unconstitutional, is reversed and the case remanded with directions to quash the writ. No costs allowed.

McQUADE, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.