[No. 44667. En Banc. June 8, 1978.]

*In the Matter of the Detention of*
ROYCROFT PATTERSON.

DONALD F. ALLISON, ET AL, *Appellants,* v. ROYCROFT
PATTERSON, *Respondent.*

*Christopher T. Bayley, Prosecuting Attorney,* and *Gerald A. Smith, Deputy,* for appellants.

*Jerome J. Doherty* of *Seattle–King County Public Defender,* for respondent.

HOROWITZ, J.—This case involves the constitutionality of RCW 71.05.280(3) and .290(3), sections of the civil commitment statute which allow involuntary commitment for 90 days of persons found incompetent to stand trial for criminal charges. Respondent challenged a petition for his commitment under these sections on the ground the statutes violate equal protection and due process. The court below agreed and dismissed the petition for respondent's commitment. We reverse.

Respondent Roycroft Patterson was charged with two counts of burglary in the second degree after having twice broken into other people's homes. Each time he claimed he

lived there or knew the owner. He was examined for competency to stand trial under RCW 10.77.060, which permits a 15-day commitment for this purpose. After an initial determination respondent was incompetent to stand trial, the criminal proceedings were stayed and respondent was committed to Western State Hospital for a 90-day period of evaluation and treatment pursuant to RCW 10.77.090, subsection (1). He did not gain competency during the first 90 days and was therefore committed for a second 90-day period under RCW 10.77.090(2). At the end of the second 90-day period, respondent was once again found incompetent. RCW 10.77.090(3) requires that criminal charges be dropped against any defendant found unlikely to regain competency within a reasonable period of time after the two 90-day periods of commitment for evaluation and treatment provided by subsections (1) and (2). Pursuant to subsection (3) the charges against respondent were dropped. Subsection (3) also provides, however, that the defendant may either be released or have civil commitment proceedings instituted against him. In this case, civil commitment proceedings were instituted against respondent. Only the constitutionality of those civil proceedings is now in question.

Civil commitment is governed by RCW 71.05. Under the normal procedure prescribed by that statute, a person may be initially detained for a 72-hour period of evaluation and treatment, during which time the staff of the treatment facility may petition the court for a 14-day detention pursuant to RCW 71.05.230. The petition may be granted only after a hearing at which the court must conclude by a preponderance of the evidence that the person "presents a likelihood of serious harm to others or himself, or is gravely disabled," and that less restrictive alternatives are not in the best interest of the individual or others. RCW 71.05-.240. The commitment grounds of serious harm and grave disability require a finding of physical danger to self or others. *See* RCW 71.05.020(1), (3).

Following the 72–hour and 14–day detentions, a person civilly committed may be confined for a 90–day period of further treatment under RCW 71.05.280 and .290. These two sections also allow a 90–day commitment of persons found incompetent to stand trial under RCW 10.77.090(3), without initial 72–hour and 14–day periods of civil detention as necessary prerequisites. These are the two sections now challenged.

Under RCW 71.05.290(3), a person found incompetent to stand trial pursuant to RCW 10.77.090(3), as was respondent here, may be civilly committed for 90 days pursuant to a petition for such commitment filed by the professional in charge of the treatment facility. As pointed out above, no petitions for initial 72–hour and 14–day periods of detention need be filed. The grounds for commitment of these persons, unlike those for initial and shorter periods of civil commitment, do not involve a threat of physical danger to self or others. The grounds are stated in RCW 71.05.280(3):

(3) Such person is in custody because he has committed acts constituting a felony, and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts. In any proceeding pursuant to this subsection it shall not be necessary to show intent, wilfulness, or state of mind as an element of the felony . . .

At the end of respondent Patterson's second 90–day period of detention for evaluation and treatment under RCW 10.77, the professionals in charge of Western State Hospital filed a petition for his 90–day civil commitment pursuant to RCW 71.05.290(3). The petition stated respondent was in custody because he had committed acts constituting a felony and, as a result of his disorder, he presented a substantial likelihood of repeating similar acts. The petition also stated there are no less restrictive alternatives to detention in respondent's best interest, and that, "if not held in a structured setting, he could easily become involved in criminal acts to meet his needs." The affidavit

accompanying the petition sets out the diagnosis of respondent's illness as schizophrenia, chronic and undifferentiated, and describes the symptoms of his illness as "a fixed delusional system." The affidavit states again the opinion of the staff psychologist and psychiatrist that "this man's perplexity and confusion is such that if he were not in a structured setting, he could easily become involved in criminal acts to meet his needs." Respondent filed a motion to dismiss the petition.

At a November 1976 hearing the criminal charges against respondent were dismissed pursuant to RCW 10.77.090(3), as noted above, because of his continued incompetency to stand trial. The order of dismissal included a conclusion respondent should be detained pending civil commitment proceedings. The court then immediately considered respondent's motion to dismiss the petition for his civil commitment. The staff psychiatrist of Western State Hospital testified regarding respondent's illness, his opinion that less restrictive treatment is not appropriate, and his opinion that respondent would not physically harm anyone. After oral argument, the court below entered an order dismissing the petition on the ground that RCW 71.05.280(3) and .290(3) are unconstitutional. Respondent Patterson was released. The hospital officials appeal from this order.

 This court was informed at oral argument that respondent Patterson was at that time committed in a California state mental hospital. He had been committed after being found incompetent to stand trial on arson charges stemming from an incident in California in January 1977. The issue here is therefore moot with regard to respondent Patterson. Nonetheless, this court will review an otherwise moot case if matters of continuing and substantial interest are involved. *Northwest Trollers Ass'n v. Moos,* 89 Wn.2d 1, 568 P.2d 793 (1977); *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 532 P.2d 614 (1975); *Sorenson v. Bellingham,* 80 Wn.2d 547, 496 P.2d 512 (1972). Under the criteria set out in *Hartman v. State Game Comm'n, supra,* this case is appropriate for review

because it presents a question of a public nature which is likely to recur, and for which an authoritative determination now is desirable for the future guidance of public officers. We therefore decide the case on its merits. In view of these unusual circumstances, the argument made by appellants that respondent Patterson has no standing is irrelevant.

Counsel for respondent first contends RCW 71.05.290(3) violates equal protection by treating persons found incompetent to stand trial differently from other persons subject to civil commitment proceedings. Specifically, persons detained initially under the civil commitment statute must be found to be physically dangerous, and may be subject to a 90–day commitment only after the initial 72–hour and 14–day detentions. Persons in respondent's class, on the other hand, may be civilly committed for 90 days upon petition by the proper officials without the need for the initial and shorter civil detention periods, and without finding they are physically dangerous to themselves or others. This different treatment, it is argued, deprives persons in respondent's class of substantial protections. It is further argued that the basis for the different treatment of these persons is the fact that criminal charges have been filed against them, and that this alone is insufficient reason for different treatment. Finally this court is urged to apply strict scrutiny to the classification because the freedom of persons subject to the statute is at stake.

■ We believe the rational relationship test is the proper test to apply to this statute to determine the equal protection issues raised. Courts have uniformly applied the rational relationship test to the statutes creating differing classes of persons for purposes of involuntary commitment statutes. *See Dorsey v. Solomon,* 435 F. Supp. 725 (D. Md. 1977); *French v. Blackburn,* 428 F. Supp. 1351 (M.D.N.C. 1977); *Lynch v. Baxley,* 386 F. Supp. 378 (M.D. Ala. 1974); *Vecchione v. Wohlgemuth,* 377 F. Supp. 1361 (E.D. Pa. 1974). The United States Supreme Court impliedly used the rational relationship test in *Jackson v. Indiana,* 406

U.S. 715, 724, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972) when it looked for a "conceivable basis" for a distinction. A federal district court interpreted *Jackson* as using the rational relationship test in *French v. Blackburn, supra*. Counsel for respondent cites no case, and we have found none, applying the strict scrutiny test to involuntary commitment procedures. Our inquiry is therefore whether the distinction made bears a rational relationship to a legitimate purpose of the state.

Applying that standard, we find no equal protection violation here. Persons subject to the special procedures for the 90–day commitment under RCW 71.05.290(3) have been detained for a total of 195 days of treatment and evaluation, and have had three hearings on competency to stand trial. The initial report of examination for competency includes a professional opinion as to

> whether the defendant is a substantial danger to other persons, or presents a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

RCW 10.77.060(3)(f). By contrast, persons subject to the normal civil commitment proceedings for a 90–day commitment have been observed for a total of only 17 days and have had only one hearing to determine whether the grounds for their commitment exist.

Furthermore, although respondent contends the State is under no duty to seek less restrictive alternatives for incompetent persons, RCW 71.05.300 provides that, for any person for whom a 90–day petition has been filed:

> The court may, if requested, also appoint a professional person . . . to seek less restrictive alternative courses of treatment . . . on behalf of the detained person.

At the hearing on the petition for a 90–day civil commitment the same procedures, burden of proof, and other protections are provided for incompetent persons as for others subject to a 90–day civil commitment. *See* RCW 71.05.310.

■ We conclude the procedures under RCW 71.05-.290(3), which differ in only minor aspects from procedures for other persons subject to civil commitment, are fully adequate under the rational relationship test to protect respondent's right to equal protection of the laws. The procedures show particular attention to the circumstances of an individual found incompetent to stand trial. They demonstrate, perhaps, a judgment that the 72–hour and 14–day detention periods would serve no useful purpose for persons in respondent's circumstances, who have already been in evaluation and treatment programs for 195 days. The special procedure of RCW 71.05.290(3) for transition of these persons to civil commitment, where appropriate, is rationally related to the purpose of such a commitment.

Respondent points to *Jackson v. Indiana, supra,* for the proposition that the mere filing of criminal charges without more is insufficient reason for treating persons incompetent to stand trial differently from others in civil commitment proceedings. The issue in *Jackson,* however, was the constitutional protections to be afforded to persons subject to indefinite commitment because they have been found incompetent to stand trial. The Supreme Court held a state could not commit a person who is incompetent to stand trial for an indefinite period upon a mere showing of incompetency, where others subject to indefinite commitment were afforded substantial procedural protections. The effect of the statute challenged there, the court found, was to condemn incompetent persons to permanent institutionalization; the distinctions the state had made, it was held, had deprived them of substantial rights. By contrast, persons in respondent's class here are not subject to indefinite commitment, and must be found by clear, cogent and convincing evidence to have committed felonious acts and to present a substantial likelihood of repeating similar acts in the future in order to be committed for only 90 days. Furthermore, such persons are given exactly the same treatment at the 90–day commitment stage as are all other

persons in the civil commitment process. They are therefore not denied equal protection of the laws.

Respondent contends, however, there is one other significant difference in treatment afforded persons in his class, that is, the grounds upon which they may be committed. The grounds of commitment of persons subject to the special procedure of RCW 71.05.290(3), as noted above, are found in RCW 71.05.280(3). That section allows 90–day commitment of persons in custody who have committed acts constituting a felony (without regard to their state of mind) and who present a substantial likelihood of repeating similar acts in the future. Respondent contends this standard for commitment violates both equal protection and due process because it does not meet the test of dangerousness, the sine qua non of civil commitment. We cannot agree.

Respondent first argues this ground for commitment was not even intended to apply to persons found incompetent to stand trial. The argument is based on the definition of "custody" in RCW 71.05.280 as detention pursuant to RCW 10.76, not RCW 10.77. This argument does not account for the fact that RCW 71.05.290(3), which makes RCW 71.05.280(3) applicable to persons in this class, was enacted 1 year after the other relevant provisions. By making specific reference to .280(3) as the grounds for 90–day commitment, the later statute .290(3), had the effect of including persons found incompetent to stand trial within the definition of "in custody." RCW 71.05.280(3) was therefore clearly intended by the legislature to be applicable to persons in respondent's class.

It is next contended that the statute deprives persons in respondent's class of equal protection and due process because it does not allow them to litigate the question whether they are dangerous. All felonies are not dangerous, it is argued, so commission of acts constituting a felony may not be presumed to prove dangerousness. By contrast, other persons entering civil commitment process through the 72–hour and 14–day detention periods must be found

by a preponderance of the evidence to present a physical danger to themselves or others.

Persons in respondent's class, of course, can litigate the question whether they committed the alleged felonious acts at the hearing on the petition for the 90-day commitment. The grounds set forth in .280(3) include the fact that the person committed acts constituting a felony. Under the rules for the hearing on the petition set out in RCW 71.05-.310, the State must prove its grounds by "clear, cogent, and convincing evidence." We held this standard to be equivalent to the criminal standard of beyond a reasonable doubt in *In re Levias,* 83 Wn.2d 253, 256, 517 P.2d 588 (1973).

The basic question underlying respondent's contention is whether persons who have committed acts constituting a felony, and who are found by mental health professionals and a court or jury to be likely to do so again, are dangerous. Under Washington law the only basis for involuntary commitment is dangerousness. We held in *In re Levias, supra* at 257, that there is no basis for involuntary commitment of persons "*who are not unsafe.*" We did not limit the meaning of dangerousness, though, to physical dangerousness. Acts which are so seriously antisocial as to be classed felonies are dangerous to the security, if not the lives, of our citizens. The State has a legitimate interest in protecting its citizens against such acts. We said in *Alter v. Morris,* 85 Wn.2d 414, 420, 536 P.2d 630 (1975) that the State's interest in commitment is in "the safety *and security* of its citizens." (Italics ours.) Nor does involuntary commitment of persons likely to commit such acts exceed the constitutional limits of the State's power. In his concurring opinion in *O'Connor v. Donaldson,* 422 U.S. 563, 582, 45 L. Ed. 2d 396, 95 S. Ct. 2486 (1975), Chief Justice Burger said, "There can be little doubt that in the exercise of its police power a State may confine individuals solely to protect society from the danger of significant antisocial acts". We hold that civil commitment of persons who have

committed significant antisocial acts classed as felonies violates neither equal protection nor due process.

It is argued that persons in respondent's class are nonetheless deprived of their constitutional rights because they may not show they did not have the requisite state of mind to commit a felony. Thus, it is argued, their acts are presumed to be felonious even though they could not have had the intent to commit a felony because of their mental illness. The statute does not, of course, presume that persons in respondent's class have committed felonies. It only provides for commitment of mentally ill persons who have committed acts which, apart from state of mind, constitute felonies, that is, are seriously antisocial acts. The issue of state of mind, or blameworthiness, is irrelevant. It is the nature of the acts themselves as presenting a danger to society, and not the state of mind of the actor, which is relevant.

The judgment of the court below is reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.