[Nos. 46710, 46712, 46713. En Banc. October 2, 1980.]

*In the Matter of the Personal Restraint of*
THEODORE HARRIS, ET AL, *Petitioners.*

*John H. Hertog, Jr., Steven G. Scott, Dan Stormer,* and *Amy L. Crewdson* of *Institutional Legal Services,* for petitioners.

*Norm Maleng, Prosecuting Attorney for King County, Patricia H. Aitken, Assistant Chief Deputy, Marc Boman* and *Gerald A. Smith, Deputies, Don Herron, Prosecuting Attorney for Pierce County,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

ROSELLINI, J.—The petitioners are confined in or conditionally released from state mental hospitals having been committed under RCW 10.77, providing procedures for treatment of the criminally insane. They had been charged with felonious crimes against property and had been acquitted by reason of insanity. It is their contention here that their crimes constituted "less serious" felonies, within

the meaning of certain language found in the case of *Alter v. Morris,* 85 Wn.2d 414, 536 P.2d 630 (1975). As a consequence, they maintain, they should not have been prosecuted but rather should have been proceeded against under RCW 71.05, a statute which deals with civil commitment of the mentally ill.

The petitioners in that case were, like the petitioners here, confined in state mental hospitals after having been charged with criminal conduct and having been found (1) innocent by reason of insanity and (2) presently dangerous. It was their contention that because of differences in procedures which made release more difficult for a person criminally committed,[1] they were denied equal protection of the laws. There was but a single standard for detention—that of "dangerousness," they argued, and there was no real distinction between the dangerousness of a person criminally committed and one civilly committed. This was so, they said, because both statutes made provision for commitment of persons who had committed dangerous crimes.

Where a person has been found not guilty of a felony by reason of insanity and also has been found to be presently dangerous, RCW 10.77.110 provides for commitment pursuant to that statute. RCW 10.77.090 provides for commitment of a person found incompetent to stand trial. If a person so committed has not regained competency within a specified time, the charges are to be dismissed without prejudice and either civil commitment proceedings shall be instituted, if appropriate, or the court shall order release of the defendant. These provisions were in effect when the events involved in *Alter* occurred.

At that time, the pertinent provisions of the civil commitment statute were contained in Laws of 1974, 1st Ex.

---

[1]RCW 71.05 puts the burden of justifying continued custody of the civilly committed person on those who have him in their charge. RCW 10.77 makes it the burden of a person committed under that statute to demonstrate that he is eligible for discharge. He cannot be confined under that statute, however, for a period exceeding the maximum sentence for the crime with which he was charged.

Sess., ch. 145, p. 476. Section 19(3) of that act (RCW 71.05.280(3)), set forth the grounds for extension of initial commitment. Under subsection 3, an extension was authorized for a person who was

> in custody because he [had] committed acts constituting a felony, and as a result of a mental disorder, [presented] a substantial likelihood of repeating similar acts.

Section 20 (RCW 71.05.290) provided for the filing of a petition for a 90–day extension during the 14–day confinement. Subsection 3 authorized a petition for a 90–day commitment where a person had been determined to be incompetent and the charges had been dismissed pursuant to RCW 10.77.090(3), without the necessity of petitioning for initial or 14–day commitment. Section 23(2)(c) (RCW 71.05.320(2)(c)) authorized commitment for an additional 180 days where a person had been in custody pursuant to section 20(3) (RCW 71.05.290(3)).

Thus it will be seen that under RCW 71.05, as it stood in 1975, civil commitment was authorized for persons charged with felonies who had been found incompetent to stand trial and who, as a result of a mental disorder, presented a "substantial likelihood of repeating similar acts." It evidently was the opinion of this court in *Alter* that, in addition, RCW 71.05.280(3) authorized the prosecutor to seek civil commitment of persons who had committed "less serious" felonies. Upon this assumption, the majority reasoned that persons committed under that section were apt to be less dangerous than those confined under RCW 10.77 as criminally insane. Thus it found a distinction between the danger threatened by persons committed under RCW 10.77 and those committed under RCW 71.05.

██ Upon reexamination of the statutes and in light of the subsequent revision of RCW 71.05.280(3), we are convinced that this construction was erroneous. When the cited provisions are read together, it becomes evident that the legislature, when it spoke in these provisions of a person who has committed an act constituting a felony, had in mind one who has been found incompetent to stand trial

and against whom the charges have been dismissed pursuant to RCW 10.77.090(3). It is true that RCW 71.05.280(3) as it stood in 1975 used language broad enough to include persons who were in custody because they had committed acts constituting a felony, but who, for some reason other than an adjudication of incompetency, had not been tried. However, this section serves the limited purpose of designating the circumstances which must be found before a 90–day extension of confinement can be sought. In the sections providing for the actual extensions, the references to felonious conduct refer only to circumstances where the person in question has been found incompetent to stand trial. The fact that the language in RCW 71.05.320(2)(c), providing for a 180–day extension, was not broad enough to include any other class was apparent to the majority in *Alter*. It resolved the dilemma by assuming that the reference in that section to RCW 71.05.290(3) was a drafting error, and that the reference should have been to RCW 71.05.280(3).

The obvious difficulty with that interpretation is that it left the persons in charge with no authority to petition for continued confinement of persons in custody under RCW 71.05.290(3), namely, those found incompetent to stand trial but still posing a danger to others, who were initially committed upon a 90–day petition. Such persons, of course, could well be and undoubtedly often are ones who have committed exceedingly violent acts and who pose a very great threat to others.

The dissenters in *Alter* observed that there was no statutory language to support the majority's theory that there are serious felonies which are to be prosecuted, and less serious felonies which are to be excused in the hope that civil commitment will be effected. That theory, the opinion said,

> places a new burden upon the prosecutor. If the felony is not "serious," he must decide in advance of prosecution whether the accused is insane or else he must prosecute only "serious" felonies. The majority has not given him

the benefit of any standard by which to determine which felonies are serious and which are trifling.

*Alter,* at 432.

The "less serious" felony concept adopted in *Alter* was rejected in a case decided in 1978, *In re Patterson,* 90 Wn.2d 144, 579 P.2d 1335 (1978). We held there that the requirement that a person be dangerous to himself or others, as a basis for involuntary commitment, is not limited to cases where the person presents a physical danger. Rather, we said, acts which are so seriously antisocial as to be classed as felonies are dangerous to the security, if not the lives, of our citizens and are within the contemplation of the statute.

The dilemma created in *Alter* for custodians of the mentally ill, as well as for prosecutors, was resolved by the legislature in 1979 when it amended RCW 71.05.280(3) (Laws of 1979, ch. 215, § 14, p. 1882) to make it expressly apply only to persons against whom criminal charges have been dismissed pursuant to RCW 10.77.090(3). The present section authorizes an extension where:

> (3) Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.090(3), as now or hereafter amended, and has committed acts constituting a felony, and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts. . . .

RCW 71.05.280(3). At the same time, RCW 71.05.320(2)(c) was amended to refer to RCW 71.05.280(3), rather than .290(3), thereby making it applicable to all persons in custody pursuant to RCW 10.77.090(3), regardless of whether they were initially detained for 72 hours under RCW 71.05.180,[2] for 90 days under RCW 71.05.320, or for an additional 180 days under that section.

■ An amendment to a statute is to be read in the light of cases construing the statute. *Neil F. Lampson Equip.*

---

[2]The 72–hour and 14–day commitment procedures (*see* RCW 71.05.230 *et seq.*) may be bypassed where a person is in custody pursuant to RCW 10.77-.090(3). *See In re Patterson,* 90 Wn.2d 144, 579 P.2d 1335 (1978).

*Rental & Sales, Inc. v. West Pasco Water Sys., Inc.,* 68 Wn.2d 172, 412 P.2d 106 (1966). When this amendment is viewed in conjunction with the interpretation of the prior language which was adopted by the majority in *Alter v. Morris, supra,* it is evident that the legislature intended to correct that interpretation and to make the statutory provisions consistent within themselves and with the intent of the criminal law defining felonies.

Thus *Alter* was based upon an erroneous interpretation of the civil commitment law; and under that law the petitioners here are subject to the same commitment provisions as others who have been charged with felonies and found not guilty by reason of insanity.

■ From the fact that RCW 10.77 (providing for commitment of the criminally insane) was upheld in part upon an invalid theory, it does not follow that the holding of the case was in error. In *In re Patterson, supra,* we said that the rational relationship test is the proper test to apply to statutes creating differing classes of persons for purposes of involuntary commitment. Under that test, a second ground relied upon by the majority was sufficient to sustain the constitutionality of the act. This court recognized that social and scientific methods of predicting future harmful conduct are by no means perfected. Nevertheless, it said, the State's interest in the safety of its citizens is of sufficient importance to permit the legislature some leeway in formulating what are essentially predictive standards. It took note that under our statutes, prediction in the case of the criminally insane is based upon proof of prior harmful acts, a proof which has been made under full criminal due process standards.[3] Commitment under the civil statute, on

---

[3]Proof of dangerousness is further assured by the fact that, in determining whether a person acquitted of a crime by reason of insanity should be involuntarily committed or released, the State has the burden of proof by a preponderance of the evidence. *State v. Wilcox,* 92 Wn.2d 610, 600 P.2d 561 (1979).

A defendant may waive trial under RCW 10.77.080 and move for acquittal on grounds of insanity, but in doing so he effectively admits that he committed the acts charged. *State v. Jones,* 84 Wn.2d 823, 529 P.2d 1040 (1974).

the other hand, does not carry the full panoply of due process guarantees which are accorded one charged with a crime, although it does require proof that is clear, cogent and convincing.

The difference is sufficient to justify the distinction made by the legislature between the civilly committed and the criminally committed with respect to discharge procedures, and consequently to support the conclusion reached by the majority in *Alter v. Morris,* 85 Wn.2d 414, 536 P.2d 630 (1975).

Inasmuch as the petitioners are properly subject to the provisions of RCW 10.77, their petitions are denied.

UTTER, C.J., and STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.