## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>M.L.H. | No. 53436-3-II<br><br><br>PUBLISHED OPINION |

CRUSER, J. — The State appeals the denial of its petition for a felony-based civil commitment pursuant to RCW 71.05.280(3).[1] The State argues that this appeal is not moot despite the expiration of the period of commitment because this court can still provide effective relief to the State, and that the trial court erred by determining that in this civil commitment case predicated on a dismissed charge of residential burglary the State needed to prove that MLH intended to commit a crime in the residence in order to obtain a felony-based civil commitment.

We hold this appeal is not moot because we can still provide effective relief to the State. Additionally, we hold the trial court erred by determining the State needed to prove MLH intended to commit a crime in the residence in order to obtain a felony-based civil commitment. Accordingly, we reverse the trial court's denial of the State's petition and remand for proceedings consistent with this opinion.

---

[1] RCW 71.05.280 was amended in 2020, after MLH was sentenced. LAWS OF 2020, ch. 302, § 41. This amendment does not impact the analysis in this case; therefore, we cite to the current version of the statute.

FACTS

I. UNDERLYING CRIMINAL ALLEGATION

Jon-Erik Golob awoke early in the morning to sounds in his kitchen, which sounded like someone using kitchen utensils or banging pots and pans. He was not initially concerned because he thought it might be his two-year-old daughter playing with pots and pans, or perhaps his father-in-law who frequently came over to help with Golob's daughter and had his own key to the house.

Golob eventually heard his daughter crying and at that point he and his wife, Jennifer Zhang, got up to attend to their daughter. When he and his wife entered the kitchen they found it in disarray, as though someone had attempted to make a meal, even though the kitchen was clean when the family went to bed. He then noticed a hole next to a door, which measured about eighteen inches by eighteen inches. The hole penetrated through the siding and drywall. From the inside, it looked like someone had punched the drywall out.

As Golob continued to his daughter's bedroom, he checked the video monitor that looked into her room and saw a man standing in the room. He could only see the back of the man's head and body. Golob retrieved a crowbar from the garage prior to entering the bedroom. Upon entering the room, he found the man standing next to his daughter, and asked the man to step aside. The man did so immediately. Golob's wife came in, took their child out, and called 911.

Golob asked the man his name and the man identified himself as MLH, but he could not answer any other questions, such as where he was or what year it was. Golob and MLH sat next to the bed as they waited for the police.

Golob did not know if MLH touched his daughter, but suspected that if he had it would have likely been a patting of a comforting nature, as though MLH wanted to soothe a crying baby,

rather than an aggressive touch. Golob testified that MLH was very compliant, had a friendly demeanor, and was not aggressive at all. Golob took his daughter to the pediatrician later that day and there were no signs of any assault. Golob testified none of the food in the kitchen had been eaten.

Later, when talking with a doctor during an evaluation, MLH said that he thought he was at his house when these events occurred. The State charged MLH with residential burglary, but the charge was ultimately dismissed after MLH was found incompetent to stand trial and the trial court determined he was unlikely to regain competency within a reasonable period of time.

## II. COMMITMENT PROCEEDINGS

Following the dismissal, the State filed a petition seeking to have MLH committed for 180 days of involuntary treatment. The State argued that MLH should be committed because he was gravely disabled and because he had been found incompetent to stand trial and his residential burglary charge had been dismissed. The State further contended that MLH presented a substantial likelihood of repeating similar acts.

Following a hearing on the petition, the court found MLH was gravely disabled and ordered 90 days of intensive inpatient treatment.[2] The court declined to commit MLH pursuant to a felony-based commitment because it found that in the context of residential burglary, the State was required to prove that MLH had the intent to commit a crime inside the residence, notwithstanding RCW 71.05.280(3)(a), which provides that it shall not be necessary for the State "to show intent,

---

[2] Pursuant to RCW 71.05.320(1)(c), the available period of commitment is 180 days when a person is committed pursuant a felony-based civil commitment under RCW 71.05.280(3). However, when a person is committed as gravely disabled under RCW 71.05.280, the available period of commitment is 90 days.

willfulness, or state of mind as an element of the crime." This was so, the trial court held, because absent evidence of intent in a charge of residential burglary, there was no basis to distinguish MLH's case from a criminal trespass, which is a not a felony.

The trial court found that the element of entering or remaining unlawfully in the residence had been met, and that there was a substantial likelihood of MLH committing similar acts.

ANALYSIS

I. MOOTNESS

As an initial matter, the State admits that the period of commitment under the order it appeals has expired. However, the State argues that this case is not moot because we can still provide effective relief in this case.

First, the State points out that a felony-based commitment can still be entered by the trial court. Second, under RCW 71.05.320(4),[3] the ability to seek further commitment and the duration of that commitment are different for felony-based civil commitments than for commitments based on a finding that a person is gravely disabled. MLH could, for example, no longer meet the criteria for commitment based on being gravely disabled but could still meet the criteria for a felony-based civil commitment. Finally, the State notes that without a felony-based civil commitment, "the

---

[3] RCW 71.05.320 was amended in 2020. LAWS OF 2020, ch. 302, § 45. This amendment does not impact the analysis in this case, so we cite to the current version of the statute.

prosecutor will not be notified of [MLH]'s release and will be denied an opportunity to intervene pursuant to RCW 71.05.325, .330, .335, [or] .340."[4] Sealed Br. of Appellant at 17.

We agree with the State that this case is not moot. An appeal is not moot where the appellate court can still provide effective relief. *In re Dependency of T.P.*, 12 Wn. App. 2d 538, 544, 458 P.3d 825 (2020) (citing *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004)). Here, we can provide effective relief to the State by remanding this matter to the trial court for further proceedings. The trial court, on remand, can still enter a felony-based civil commitment, which would affect not only the basis for further commitments and the duration of those commitments, but also the ability of the State to seek intervention in a release decision. RCW 71.05.325-.340.

## II. PROOF OF MENTAL STATE IN FELONY-BASED CIVIL COMMITMENTS

The State argues that the trial court erred by finding that in this case, where the mental state (proof of intent to commit a crime therein) is the distinguishing factor making the crime a felony,

---

[4] Each of these statutes contains a provision that provides that the prosecutor, from the county where the criminal charges were dismissed, be notified if the committed individual is to be released or placed under less restrictive treatment, and in most instances, the prosecutor may intervene. RCW 71.05.325(1) provides that the prosecutor from the county where criminal charges were dismissed must be notified if the individual responsible for filing a new petition chooses not to file a new petition for additional treatment. RCW 71.05.325(2) provides if a committed individual is granted a temporary leave without constant accompaniment by a designated individual that the prosecutor from the county where charges were dismissed must be notified as well as the prosecutor from the county that is the individual's destination. Both prosecutors are allowed to petition the court for a hearing to determine if the individual should be released. RCW 71.05.325(2), .330(2). Under RCW 71.05.330 the prosecutor where charges were dismissed must be notified if the committed individual is going to be released early and the prosecutor may petition the court for a hearing to determine if that individual should be released. RCW 71.05.335 provides that in order to modify a commitment order to require a less restrictive detention, then the prosecutor from the county where charges were dismissed must be notified and allowed to intervene in the proceeding. Finally, RCW 71.05.340 requires that prosecutor from the county where charges were dismissed must be notified and allowed to intervene if the committed individual is to be released and receive outpatient treatment instead.

the State must prove intent despite the plain language of RCW 71.05.280(3)(a). Under RCW 71.05.280(3)(a), "[i]n any proceeding pursuant to this subsection it shall not be necessary to show intent, willfulness, or state of mind as an element of the crime." The State contends that there are no exceptions under the statute for specific intent crimes like residential burglary.

The State argues the trial court's interpretation conflicts with the policy goals of providing treatment for people suffering from mental illness. Specifically, if an individual was unable to form the intent to commit the crime, the State argues, that person would be ineligible, under the trial court's interpretation, for treatment pursuant to a felony-based civil commitment.

MLH argues that the State must show intent in this circumstance because in the absence of intent, the State cannot show that MLH committed acts constituting a felony. This is because the intent to commit a crime therein is what separates residential burglary from criminal trespass in the first degree, a gross misdemeanor. Thus, MLH argues, the trial court correctly denied the petition for the felony-based civil commitment. We agree with the State.

A. LEGAL PRINCIPLES

When interpreting statutes, we "ascertain and carry out the legislature's intent." *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). "When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). A reading of a statute that produces an absurd result must be avoided. *Tingey v. Haisch*, 159 Wn.2d 652, 663-64, 152 P.3d 1020 (2007). "'[I]t will not be presumed that the legislature intended absurd results.'" *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting *State v. Delgado*, 148 Wn.2d 723,

733, 63 P.3d 792 (2003) (Madsen, J., dissenting)). "Where an absurd result is produced, further inquiry may be appropriate." *Tingey*, 159 Wn.2d at 664. We review questions of statutory interpretation de novo. *In re Det. of W.C.C.*, 185 Wn.2d 260, 265, 370 P.3d 1289 (2016).

RCW 71.05.280(3) allows someone to be committed if that "person has been determined to be incompetent and criminal charges have been dismissed." The person must have "committed acts constituting a felony" and have a mental disorder that "presents a substantial likelihood of repeating similar acts." RCW 71.05.280(3). And RCW 71.05.280(3)(a) provides that it is not necessary for the State "to show intent, willfulness, or state of mind as an element of the crime" on which the State seeks a felony-based commitment order. Our supreme court has explained that acts constituting a felony are "seriously antisocial acts," and the focus is on whether "the nature of the acts" presents a danger and the "state of mind, or blameworthiness, is irrelevant." *In re Det. of Patterson*, 90 Wn.2d 144, 154, 579 P.2d 1335 (1978), *overruled on other grounds by In re Det. of McLaughlin*, 100 Wn.2d 832, 676 P.2d 444 (1984).

B. ANALYSIS

The language of RCW 71.05.280(3) is clear and unambiguous. By its plain language, it provides that the State need only show that the respondent in a felony-based civil commitment proceeding committed acts constituting a felony. Further, the statute provides that the State is not required to show intent, willfulness, or state of mind in order to demonstrate that a defendant has committed acts constituting a felony. RCW 71.05.280(3)(a).

*Patterson* controls our decision in this case. In *Patterson*, the defendant was charged with two counts of burglary in the second degree. 90 Wn.2d at 145. Following dismissal of his case due to his incompetency, the State sought a felony-based civil commitment. *Id.* at 147-48. Among

other claims, Patterson asserted that RCW 71.05.280 violated his right to due process because it does not provide him the opportunity to show that he did not have the "requisite state of mind to commit a felony." *Id.* at 154. The supreme court rejected his claim, stating:

> The statute does not, of course, presume that persons in respondent's class have committed felonies. It only provides for commitment of mentally ill persons who have committed acts which, apart from state of mind, constituted felonies, that is, are seriously antisocial acts. *The issue of state of mind, or blameworthiness, is irrelevant*. It is the nature of the acts themselves as presenting a danger to society, and not the state of mind of the actor, which is relevant.

*Id.* (emphasis added).

Under *Patterson*, the State was not required to prove that MLH had the intent to commit a crime inside the residence to support its petition for a felony-based civil commitment. As the State notes, imposing such a requirement could render it impossible to obtain a felony-based civil commitment in the case of a respondent who, because of their mental illness, is unable to form criminal intent. This is inconsistent with the goal of the legislature in seeking "[t]o protect the health and safety of persons suffering from mental disorders and substance use disorders and to protect public safety through use of the parens patriae and police powers of the state." Former RCW 71.05.010(1)(a) (2016).

Because the State was not required to prove that MLH had the intent to commit a crime inside the residence based on the plain and unambiguous language of RCW 71.05.280(3)(a), and the State otherwise demonstrated acts constituting a felony, the trial court erred in denying the State's petition for a felony-based civil commitment.

## CONCLUSION

We hold that this case is not moot, and the trial court erred in concluding that the State was required to prove that MLH had intent at the time of the commission of the crime as a part of its

petition for a felony-based civil commitment. Accordingly, we reverse the decision of the trial court and remand this matter for proceedings consistent with this opinion.

_____
CRUSER, J.

We concur:

_____
WORSWICK, P.J.

_____
MELNICK, J.P.T.