OPINION OF THE COURT
Gabrielli, J.
We are called upon in this case to consider the constitutional validity of CPL 330.20, which mandates that persons acquitted by reason of mental disease or defect be automatically committed to the custody of the Commissioner of Mental Hygiene without prior hearing. Petitioner appeals from an order of the Appellate Division, First Department, reversing a judgment of Supreme Court, New York County, which had directed that the petitioner be forthwith examined as to his present mental condition prior to commitment. We find the provisions of CPL 330.20 to be in accord with the mandates of *337 due process and equal protection, and affirm the order appealed from.
On January 8, 1970, petitioner fatally stabbed his nine months’ pregnant girl friend. He was found to be unfit to proceed to trial, and was institutionalized until March, 1973, at which time he was deemed fit to proceed and was released on bail. In November, 1975, he was tried without jury, and found not guilty by reason of mental disease or defect. Petitioner then commenced this proceeding, requesting that rather than being automatically committed pursuant to CPL 330.20, he first be examined to determine whether his present mental condition warranted commitment. He apparently remains unhospitalized pending the outcome of this proceeding.
CPL 330.20 (subd 1) provides in pertinent part that "[u]pon rendition of a verdict of acquittal by reason of mental disease or defect, the court must order the defendant to be committed to the custody of the commissioner of mental hygiene to be placed in an appropriate institution in the state department of mental hygiene.” It should be noted that this provision is mandatory rather than discretionary, and does not require or provide for a hearing or examination prior to commitment. The remainder of the statute deals mainly with procedures for conditional release and other discharge provisions. It is further provided that if the commissioner determines that such a person "may be discharged or released on condition without danger to himself or to others”, the commissioner may apply to the court for permission to release or discharge him. In such circumstance, the court cannot deny the application without holding a hearing "to determine whether such person may safely be discharged or released”. Should the commissioner refuse to recommend discharge or release, the statute provides that the committed individual may himself apply to the court for release at any time. Petitioner essentially contends that the statute is fatally defective insofar as it authorizes commitment without any prior hearing, upon a verdict of acquittal by reason of mental disease or defect. We disagree.
New York law has long provided for the automatic institutionalization of persons acquitted because of insanity (see Code Crim Pro of 1881, § 454), and we have consistently sustained the validity of such provisions (see People ex rel. Peabody v Chanler, 196 NY 525, affg 133 App Div 159). Indeed, as recently as 1966 we sustained the constitutionality of the former commitment statute and predecessor to the present *338 provision, in People v Laliy (19 NY2d 27). Interestingly, since that time the statute has been amended to delete the provisions which then authorized commitment to the Correction Department rather than the Commissioner of Mental Hygiene (see L 1974, ch 629, § 4; see, also, Matter of Kesselbrenner v Anonymous, 33 NY2d 161; People v Lally, supra). The fact that we have previously sustained the statute does not, of course, render it immune from constitutional attack based on the perhaps somewhat more sensitive approach to the requirements of due process and equal protection with respect to the mentally disturbed, which has developed in the last decade (see Jackson v Indiana, 406 US 715; Baxstrom v Herold, 383 US 107; Bolton v Harris, 395 F2d 642; State v Krol, 68 NJ 236; see, also, O’Connor v Donaldson, 422 US 563; Humphrey v Cady, 405 US 504). Nonetheless, viewed even in light of these developments, the automatic commitment procedure of CPL 330.20 is valid (cf. Fhagen v Miller, 29 NY2d 348, cert den 409 US 845).
CPL 330.20 deals with an exceptional class of individuals who may properly be treated somewhat differently from those who are not subject to the statute in that they have not been acquitted by reason of insanity(see Matter of Miller [Lee], 46 AD2d 999, 1000; United States v Ecker, 543 F2d 178, 196-197). The statute applies only to those individuals who have admittedly cominitted or have been proven to have committed what would normally be a crime, but who have been relieved of the penal sanctions of criminal liability as a result of their success in convincing a Judge or jury that they were insane. It has been forcefully said, and with much logic, that "[although acquittal represents a lack of criminal culpability, and therefore makes punitive treatment inappropriate, reliance on the insanity defense is tantamount to an admission that the person performed the criminal act in question and has therefore been dangerous to the community” (Note, Commitment of Persons Acquitted by Reason of Insanity: The Example of the District of Columbia, 74 Col L Rev 733). An individual who has committed an act of violence, and has thus demonstrated his dangerousness, and who has successfully asserted an insanity defense, may quite properly be treated somewhat differently from other individuals who, although they may in fact be potentially equally dangerous as a result of mental problems, have not yet so vehemently demonstrated their dangerousness by violent antisocial behavior.
*339 Obviously, that persons subject to the provisions of CPL 330.20 are an exceptional class, and may thus be treated differently because of the State’s dual interest in protecting both these individuals and society as well, would not permit the State to ignore all constitutional guarantees, nor to provide disparate treatment not reasonably related to the actual distinguishing factors. This is not, of course, the effect of CPL 330.20. The challenged provision simply provides that a person who has been acquitted by reason of mental disease or defect is initially to be committed to the custody of the Commissioner of Mental Hygiene rather than being immediately released. As we observed in People v Lally, "[w]e see no reason why a man who has himself asserted that he was insane at the time the crime was committed and has convinced the jury thereof should not in his own interest and for the protection of the public be forthwith committed for detention, examination and report as to his sanity” (19 NY2d, at p 33). It must be emphasized that although CPL 330.20 mandates automatic commitment without a prior hearing for persons acquitted by reason of insanity, such persons are not at all thereby deprived of the procedural safeguards guaranteed other institutionalized individuals. Not only are they guaranteed periodic re-examination and re-evaluation (Mental Hygiene Law, § 15.03), but also the statute itself authorizes the patient to seek a hearing at any time to challenge the validity of his detention. Moreover, pursuant to our holding in Lally, a person who has been committed via CPL 330.20 is entitled at that hearing to a jury trial on the issue of whether he "may be discharged or released without danger to himself or to others” (19 NY2d, at pp 34-35).
One final point deserves comment. Petitioner argues that if the automatic commitment procedures of CPL 330.20 are valid, there must nonetheless be some provision for a subsequent, automatic hearing within a reasonably prompt time after the commitment. He thus asks that such a hearing should be held within 15 days, by an analogy he would draw between commitment pursuant to CPL 330.20 and emergency commitment pursuant to section 31.39 of the Mental Hygiene Law. This analogy is unpersuasive for several reasons, the most obvious of which is that the 15-day limit in section 31.39 will not lead to a full hearing at its expiration, but rather to continuing commitment pursuant to medical certification with its concomitant right to a subsequent hearing within 60 days *340 (see Mental Hygiene. Law, §§ 31.27, 31.33). We think, however, that a prompt hearing should be provided. We so hold because automatic commitment under CPL 330.20 is, in a sense, based on a presumption of continuing dangerous insanity, and such a presumption may not ripen to a conclusion of dangerousness in every case, and should not be blindly applied to deprive an individual of his liberty.
The order appealed from should be affirmed, without costs.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg, and Cooke concur.
Order affirmed.