617 P.2d 837

Peppi FLORES, Petitioner–Appellant,

v.

The Honorable Edward J. LODGE, District Judge, Milton G. Klein, Director of Department of Health and Welfare, State of Idaho, and D. George Miller, Acting Administrator of the Idaho State Board of Corrections, Idaho Secure Medical Facility, Respondents.

No. 13263.

Supreme Court of Idaho.

Sept. 10, 1980.

Klaus Wiebe, Ada County Public Defender and Laird B. Stone, Boise, for petitioner–appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, P. Mark Thompson, Deputy Attys. Gen., Boise, for respondents.

SCHROEDER, Judge, Pro Tem.

This is an appeal from an order entered by the district court denying the appellant's petition for a writ of habeas corpus upon the grounds that the appellant has an adequate remedy pursuant to I.C. § 18–214. The issue on appeal is whether a writ of habeas corpus is an appropriate method of challenging the confinement of a person pursuant to I.C. § 18–214 who claims that he is not receiving care and treatment as required by the statute, or whether an application to the committing court is the exclusive remedy.

On September 18, 1974, Peppi Flores, appellant, was acquitted of burglary in the second degree on the grounds that he was suffering from a mental disease or defect. Judge Dunlap of the Third Judicial District ordered that he be committed to the custody of the Idaho Department of Health and Welfare and that he be housed at the Psychiatric Maximum Security Facility at the Idaho State Penitentiary. The order further stated that Mr. Flores was not to be released from that facility without a hearing as set forth in I.C. § 18–214.

On November 10, 1975, Mr. Flores petitioned the committing court for a conditional release which was denied by Judge Lodge who concluded that Mr. Flores "had not progressed to a point that he can be discharged or released without danger to himself or others." At that time Judge Lodge

ordered that Flores be transferred to a facility where he could receive treatment for alcoholism. In December, 1975, Mr. Flores was transferred to Idaho State Hospital South in order that he might participate in an alcohol rehabilitation program. Within a month he was returned to the Psychiatric Maximum Security Unit at the Idaho State Penitentiary because he did not respond to the program at State Hospital South and he needed more security than could be provided by that facility.

Psychiatric reports indicate that subsequent to his return to the Idaho State Penitentiary Mr. Flores' condition improved. On March 22, 1977, appellant was conditionally released without a court order to the regional office of the Department of Health and Welfare in Nampa. The conditional release was unsuccessful, and Mr. Flores was returned to the psychiatric unit at the Idaho State Penitentiary on September 23, 1977. At that time, and at all times subsequent, reports from the psychiatric unit maintain that although Mr. Flores suffers from a severe anti–social personality disorder, he is not mentally ill.

On December 14, 1977, the Department of Health and Welfare again petitioned for appellant's conditional release. In March of 1978, Judge Lodge denied the request to release Mr. Flores and stated that he would consider no further applications until Mr. Flores successfully completed an alcohol rehabilitation program. In June of 1978, Mr. Flores was transferred to State Hospital North, at Orofino, to participate in the alcohol rehabilitation program. He was deemed untreatable by the psychiatric staff at Orofino and was returned to the psychiatric ward at the Idaho State Penitentiary.

Approximately two weeks after Mr. Flores' return to the penitentiary, Dr. Glover, on behalf of the Department of Health and Welfare, again petitioned for Mr. Flores' conditional release. On July 13, 1978, Judge Lodge corresponded with Dr. Glover, stating that his position on the release of Mr. Flores remained the same, but that if Dr. Glover wished to pursue the petition two psychiatrists would be appointed by the court to examine Mr. Flores.

On March 5, 1979, appellant filed a petition for a writ of habeas corpus in the Fourth Judicial District. Judge Walters refused to issue the writ upon the basis that habeas corpus was an inappropriate remedy. Mr. Flores is appealing from that decision.

Mr. Flores asserts that he is being held in custody without the care and treatment to which he is legally entitled and that I.C. § 18–214 under which he was committed does not provide a remedy for persons who have been denied a conditional release by the committing court. Therefore, he maintains that he can test the validity of his confinement in a habeas corpus proceeding. The state claims that Mr. Flores is merely attempting to avoid the consequences of the ruling of the committing court that denied conditional release and to substitute the judgment of another court of co–equal status. The state asserts that the appellant's remedy is an appeal of the committing court's ruling rather than habeas corpus.

At the heart of the question is whether habeas corpus proceedings would undercut or intrude upon the specific powers of the committing court or whether such proceedings would deal with issues not reachable by the committing court that fall within the concerns of habeas corpus. Certainly habeas corpus should not be a proceeding to attempt to substitute the judgment of a Fourth District Court for that of a Third District Court. Insofar as the issues raised in Mr. Flores' petition for habeas corpus overlap those issues presented to Judge Lodge, habeas corpus is inappropriate. The appellant is limited to whatever appeal rights he may have. The appropriateness of a habeas corpus proceeding depends on whether it reaches issues that could not be determined by the committing court.

The statute under which Mr. Flores is now being held provides that he shall be in the custody of the Director of the Department of Health and Welfare "to be placed in an appropriate institution for custody, care and treatment." I.C. § 18–214(1). Similar language found in former I.C. § 66–329(h)(3), 1969 Idaho Sess. Laws, Ch.

143, § 1(h), was construed to provide a right to treatment. *Glasco v. Brassard*, 94 Idaho 162, 483 P.2d 924 (1971). I.C. § 66–1311 in the "Idaho Security Medical Facility Act," I.C. §§ 66–1301, et seq., entitled "Right to Humane Care and Treatment," provides that "every patient shall be entitled to humane care and treatment." For purposes of this decision it must be assumed that Mr. Flores is not receiving the care and treatment to which he is entitled. That is the allegation of the petition for writ of habeas corpus, and evidence was not presented to the contrary.

The petition for habeas corpus was dismissed on the basis that the Fourth District Court was not a proper forum and that it would be an intrusion upon the authority of a co–equal court to proceed. Therefore, it is necessary to determine if the committing court can deal with the problem alleged or whether the particular grievance stated falls outside the authority of that court and within the ambit of habeas corpus proceedings.

Once a commitment to the Department of Health and Welfare is made by the court pursuant to I.C. § 18–214, the Department has the power to determine the method and type of treatment and the location of the treatment. The Department can transfer the patient from one treatment facility to another without judicial authorization where the transfer is consistent with the mental health needs of the patient, but the Department cannot release the patient without a hearing before the committing court. I.C. § 18–214; *State v. Nielson*, 97 Idaho 330, 543 P.2d 1170 (1975). In this case the committing court has refused the requests for release.

A difficulty presented is that the committing statute, I.C. § 18–214, does not set forth any procedure whereby the court can enforce its order if the Department of Health and Welfare fails to care for and treat the patient. I.C. § 18–214(3) grants the committing court the authority to release the individual if it finds that he is no longer dangerous to himself or others, but the statute does not specifically authorize the committing court to review the conditions of care and treatment or the lack of it. Similarly, the statute makes no mention of relief by habeas corpus, a remedy that is specifically authorized in I.C. § 66–347, a section under the chapter heading, "Hospitalization of Mentally Ill." These omissions cause no clear answer to the question of whether the committing court has authority to deal with a failure to provide care and treatment or whether this falls within the realm of habeas corpus.

The state's argument that the allowance of habeas corpus proceedings would be forum shopping and might result in the substitution of the court in the Fourth District for the committing court is not altogether persuasive. It is not uncommon for the Fourth District Court to hear habeas corpus proceedings initiated by inmates at the Idaho State Penitentiary who have been committed from other districts. This is not viewed as undercutting the authority of the sentencing court or undermining the integrity of its orders. The habeas corpus inquiry relates to different matters over which the sentencing court has no authority to act. One may argue that the same thought applies in this instance. That is, the subject matter of an inquiry pursuant to habeas corpus proceedings is different from the authority of the committing court, and therefore, such proceedings are appropriate. However, the apparent analogy to the interplay of criminal commitments and habeas corpus proceedings is not complete; there are significant differences. The sentencing court in a felony case placing a defendant in the custody of the State Board of Correction does not have the responsibility or authority to hold a hearing to determine if the defendant should be released, except in the limited area of the 120–day retained jurisdiction. The Board of Pardons and Parole has the authority to determine the release without hearing before the sentencing court. According to I.C. § 18–214, the Department of Health and Welfare cannot release a patient without a hearing before the committing court. I.C. § 18–214; *State v. Neilson*, 97 Idaho 330, 543 P.2d 1170 (1975). Thus, greater authority exists

in the committing court acting pursuant to I.C. § 18–214 than with a sentencing court committing a defendant to the custody of the State Board of Correction. The easy analogy fails to maintain a parallel course.

The requirement of a court hearing to authorize the release of a patient committed pursuant to I.C. § 18–214 also differs from the procedure established for release of those found to be mentally ill under Title 66, Chapter 3, "Hospitalization of Mentally Ill," in which the director of the Department of Health and Welfare or his designated representative is authorized to conditionally release and ultimately discharge a patient committed by the court. I.C. § 66–338. Additionally, as noted above, this chapter, in I.C. § 66–347, specifically provides for habeas corpus proceedings, a provision not found in I.C. § 18–214. Again, no clear parallel exists to provide easy answers.

The attempts to draw the problem of this case into a capsule that matches other proceedings ultimately fail, since the legislative scheme for the treatment of those acquitted by reason of mental disease and defect differs from either the commitment of those found guilty of crime or those hospitalized as mentally ill. The authority of the committing court acting pursuant to I.C. § 18–214 continues to the point of determining release. This design indicates that the committing court is the proper forum to determine if a patient should be released, not a court of co–equal status which would intrude upon that authority. This design also indicates that if there is a violation of the court's commitment for care and treatment, the patient may present that issue to the committing court rather than seek redress in a different forum by habeas corpus.

It is this Court's conclusion that the committing court has continuing authority to act to insure that the patient is being treated. To permit an attack upon the patient's confinement by another court pursuant to habeas corpus would create a circumstance in which two courts of co–equal authority could conflict on the same subject matter.

That is not desirable, and it is not necessary. The claim of the appellant that he is not being treated may be asserted in the committing court. Dissatisfaction with the decision in that court may be appealed to the Supreme Court. The appellant may not challenge the decision in habeas corpus proceedings in a different forum.

Based upon the foregoing, the decision of the trial court is affirmed.

DONALDSON, C. J., McFADDEN and BISTLINE, JJ., and WARD, J., Pro Tem., concur.