652 P.2d 193

In the Matter of the Application of Timothy P. DOWNING, for a Writ of Habeas Corpus,

In the Matter of the Application of Peter J. HARRISON, for a Writ of Habeas Corpus,

In the Matter of the Application of Alvin H. PENNY, for a Writ of Habeas Corpus, Petitioners-Appellants,

v.

STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Respondent.

No. 13996.

Supreme Court of Idaho.

June 17, 1982.

Rehearing Denied Oct. 29, 1982.

Charles Johnson, III, of Idaho Legal Aid Services, Inc., Idaho Falls, for petitioners-appellants.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., James F. Wickham, Deputy Atty. Gen., Boise, for respondent.

BAKES, Chief Justice.

The appellants in this case instituted *habeas corpus* proceedings to challenge their commitment to State Hospital South at Blackfoot under I.C. § 18–214.[1] Subparagraph (1) of that section states the following:

"(1) When a defendant is acquitted on the ground of mental disease or defect excluding responsibility, the court shall order him to be committed to the custody of the director of the department of health and welfare to be placed in an appropriate institution for custody, care and treatment."

Each of the appellants was charged with the commission of a criminal offense, and

---

1. I.C. § 18–214 was repealed by the 1982 legislature. 1982 Idaho Sess.Laws, ch. 368, § 1. However, I.C. § 18–214 is controlling in the present matter.

each pleaded not guilty by reason of mental disease or defect. Each of the appellants was also acquitted on that basis and was automatically committed, without further hearing, to the care of the director of health and welfare pursuant to I.C. § 18–214.

Following their commitments, appellants sought release through *habeas corpus* proceedings initiated in the Seventh Judicial District on the ground that automatic commitment violated their rights to due process and equal protection of the law as guaranteed under the fourteenth amendment to the United States Constitution, and Art. 1, §§ 1, 13 and 18, of the Idaho Constitution. In essence, they argued that having been acquitted of criminal conduct, they could not be committed to a mental institution and thereby deprived of their liberty, except upon judicial determination supported by adequate proof that they were then "presently" mentally ill and dangerous. The district court granted the writs of *habeas corpus* and held a hearing on the matter. However, rather than reaching the merits of the claims, the district court ruled that *habeas corpus* proceedings were inappropriate for review of the questions presented and ordered that the writs be quashed. Appellants now appeal that order quashing the writs. This case was consolidated for purposes of argument with Supreme Court Cases Nos. 13995 and 14153.

I

The initial question to be answered is whether the district court erred in quashing the writs without reaching the merits of the claims presented. Each of the appellants was committed by a court in a judicial district other than the Seventh Judicial District. The Seventh Judicial District, however, is the district in which the appellants are restrained of their liberty. The district court quashed the writs on the authority of this Court's recent decision in *Flores v. Lodge*, 101 Idaho 533, 617 P.2d 837 (1980), which held that *habeas corpus* relief was inappropriate where the petitioner has an adequate remedy in the committing court pursuant to that court's continuing jurisdic-

tion under I.C. § 18–214. We hold that *Flores v. Lodge, supra,* is not applicable to the case at bar.

■ The privilege of the writ of *habeas corpus* is not a statutory remedy, but rather a remedy recognized and protected by Art. 1, § 5, of the Idaho Constitution. *Mahaffey v. State,* 87 Idaho 228, 231, 392 P.2d 279, 280 (1964). Nevertheless, "[h]abeas corpus is not a corrective remedy, but is concerned only with defects in a proceeding which operate to render a judgment rendered, or process issued, therein absolutely void." *Smith v. State,* 94 Idaho 469, 474, 491 P.2d 733, 738 (1971); *Stokes v. State,* 90 Idaho 339, 342–43, 411 P.2d 392, 393 (1966). Consequently, *habeas corpus* is not available to review errors which could have been raised on appeal, except "to cure certain errors occurring at a trial which are of such a nature as to deprive the court of jurisdiction to proceed with the cause or to render void the proceedings and judgment of conviction [or commitment] as, for example, where an accused has been denied a fundamental constitutional right." *Wilson v. State,* 90 Idaho 498, 501, 414 P.2d 465, 466 (1966); *see Smith v. State,* 94 Idaho 469, 474–75, 491 P.2d 733, 738–39 (1971). Furthermore, *habeas corpus* is an extraordinary writ, and its use will therefore be inappropriate where other adequate remedies are available. *Flores v. Lodge,* 101 Idaho 533, 617 P.2d 837 (1980); *Mahaffey v. State,* 87 Idaho 228, 231, 392 P.2d 279, 281 (1964).

■ A fundamental requirement of due process is that a person threatened with the deprivation of life, liberty or property be given an opportunity to be heard at a meaningful time and in a meaningful manner. *Simmons v. Board of Trustees of Independent School Dist. No. 1,* 102 Idaho 552, 554, 633 P.2d 1130, 1132 (1981). Thus, the appellants' claim that they have been denied a hearing on the question of whether they should have been committed to a mental institution is cognizable under *habeas corpus* proceedings, notwithstanding their failure to appeal, as long as there are no other adequate remedies available. The specific question to be answered in this case

is therefore whether the procedures for release under I.C. § 18–214 constitute an adequate remedy so as to preclude the availability of *habeas corpus* relief, as was the case in *Flores v. Lodge, supra.*

In *Flores v. Lodge, supra,* the petitioner had repeatedly, but unsuccessfully petitioned the committing court (Third Judicial District) for conditional release pursuant to I.C. § 18–214. Release was denied on the basis that Flores "had not progressed to a point that he [could] be discharged or released without danger to himself or others." 101 Idaho at 533, 617 P.2d at 837. Thereafter, he sought release through *habeas corpus* proceedings instituted in the Fourth Judicial District. The bases for his claim were (1) that he was being held in custody without the care and treatment to which he was legally entitled and (2) that I.C. § 18–214 did not provide a remedy for persons who have been denied a conditional release by a committing court. 101 Idaho at 534, 617 P.2d at 838. In essence, it was concluded in *Flores* that *habeas corpus* relief was unavailable due to the continuing jurisdiction of the committing court over the question of release of the person committed. While we adhere to that position, we think the opinion in *Flores* requires some clarification.

I.C. § 18–214 gives the committing court the final responsibility of determining whether "the committed person may be discharged or released on condition without danger to himself or others." I.C. § 18–214(3). The director of health and welfare must apply to the court for release of a person committed to his custody if at any time the director is of the view that the committed person may be discharged or released on condition without danger to himself or others. I.C. § 18–214(2). The person committed may also personally petition for release within certain time constraints. Thus, continuing jurisdiction is given to the committing court *for the purpose of determining whether the committed person has met the standards for release.* As concluded in *Flores,* it is inappropriate for a co-equal court to review, by means of *habeas*

*corpus* or otherwise, a committing court's decisions on whether a committed person has met the standards for release. Petitioner Flores' contention that I.C. § 18–214 provided no remedy for persons who have been denied conditional release by the committing court was unfounded, since the obvious avenue for redress was and is an appeal of the order denying release.

Flores also contended that he had not received the care and treatment to which he was entitled, and therefore should have been released. The lack of appropriate care and treatment, however, is not a condition for release under I.C. § 18–214. Thus, while such a claim may present grounds for judicial action compelling hospital officials to provide required care and treatment, such a claim does not present grounds for release and is, therefore, a question which ordinarily falls outside of the § 18–214 continuing jurisdiction of the committing court over the release of the committed person. Nevertheless, Flores asserted the lack of proper care and treatment *as a basis for release,* and such claim necessarily invoked the committing court's continuing jurisdiction to review the release of committed persons pursuant to the standards of I.C. § 18–214. Consequently, Flores' application for a writ of *habeas corpus* was improper.

The present situation, however, is distinguishable. Appellants here urge that their commitments were constitutionally defective from the outset, and therefore void. A person who has been committed pursuant to an order which is void is not subject to the restrictive release procedure of I.C. § 18–214, but rather is entitled to both apply for and obtain release *at any time* without reference to the standards and time constraints of I.C. § 18–214. An application for release upon the basis of an invalid commitment order therefore falls outside of the committing court's continuing jurisdiction under I.C. § 18–214 and is properly brought by means of an application for writ of *habeas corpus* in the district court where the person is restrained. I.C. § 19–4203(2); *cf.* I.C. § 66–347. Since the

appellants' claim is grounded on the assertion that their original commitments were invalid for lack of procedural due process, review by means of *habeas corpus* is their appropriate remedy. Nevertheless, we conclude that the order quashing the writs of *habeas corpus* was correct, because we find that appellants' commitment pursuant to I.C. § 18–214 withstands constitutional attack. Where the order of the lower court is correct, but based upon an erroneous theory, the order will be affirmed on the correct theory. *Matter of Revello,* 100 Idaho 829, 606 P.2d 933 (1980). Consequently, we address appellants' constitutional claims below.

## II

■ It has been clearly established that involuntary commitment to a mental institution constitutes a severe curtailment of an individual's liberty which invokes the constitutional protection of procedural due process. *E.g., Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). The issue in regard to due process in this case is therefore whether automatic commitment pursuant to the provisions of I.C. § 18–214 unconstitutionally denied the appellants their liberty without due process of law. Review of this question must begin with *Lynch v. Overholser,* 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).

In *Lynch* the petitioner initially pleaded not guilty to the charge against him, but later attempted to withdraw that plea and substitute a plea of guilty. The court denied that request and subsequently found Lynch "not guilty on the ground that he was insane at the time of the commission of the offense." He was thereupon automatically committed to a mental hospital pursuant to a District of Columbia statute similar to I.C. § 18–214. Lynch had neither claimed that he had not been mentally responsible nor presented evidence to support an acquittal by reason of insanity. In ruling favorably to Lynch, the United States Supreme Court stated first that statutes should be interpreted, if fairly possible, in such a way as to free them from "not insubstantial constitutional doubts," 369 U.S. at 711, 82 S.Ct. at 1067; and then concluded that the relevant automatic commitment statute did not apply to the commitment of persons acquitted by reason of insanity, where that person disclaims reliance on that defense. 369 U.S. at 719–20, 82 S.Ct. at 1072.

The primary rationale supporting that conclusion was that:

"[A]n accused 'is entitled to an acquittal of the specific crime charged if, upon all the evidence, there is a reasonable doubt whether he was capable in law of committing crime.' [Citations omitted.] Consequently, the trial judge or jury must reach a judgment or verdict of not guilty by reason of insanity even if the evidence as to mental responsibility at the time the offense was committed raises no more than a reasonable doubt of sanity." 369 U.S. at 713, 82 S.Ct. at 1069.

The court went on to state in essence that although the evidence may be such as to leave a reasonable doubt concerning a defendant's sanity, thereby precluding conviction, the evidence will not necessarily be sufficient to meet the burden of proof necessary to establish that the defendant is dangerously insane so that he may be justifiably committed to a mental institution. This reasoning is particularly significant in light of the Supreme Court's recent holding that involuntary institutional commitment of a person requires proof greater than a mere preponderance of the evidence to establish that the person being committed is dangerously insane. *Addington v. Texas,* 441 U.S. 418, 433, 99 S.Ct. 1804, 1813, 60 L.Ed.2d 323 (1979). To automatically commit an acquittee, who has neither asserted nor attempted to prove an insanity defense, simply on the basis that there is a reasonable doubt as to his mental responsibility, falls short of constitutionally required standards of proof, and denies the acquittee due process of law. In such circumstances, *Lynch* requires that other constitutionally acceptable avenues of commitment be employed. 369 U.S. at 720, 82 S.Ct. at 1072.

In the present case, however, the appellants asserted the defense of mental disease or defect. The Supreme Court in *Lynch* did not specifically decide the question of whether a defendant who pleads an insanity defense and who then is acquitted on that basis may be automatically committed to a mental institution. However, the tenor of the court's opinion in *Lynch* seemed to at least imply that such commitment is permissible. At one point the court pointed out the following:

> "The criminal defendant who chooses to claim that he·was mentally irresponsible when his offense was committed is in quite a different position. It is true that he may avoid the ordinary criminal penalty merely by submitting enough evidence of an abnormal mental condition to raise a reasonable doubt of his responsibility at the time of committing the offense. Congress might have thought, however, that having successfully claimed insanity to avoid punishment, the accused should then bear the burden of proving that he is no longer subject to the same mental abnormality which produced his criminal acts. Alternatively, Congress might have considered it appropriate to provide compulsory commitment for those who successfully invoke an insanity defense in order to discourage false pleas of insanity." 369 U.S. at 715, 82 S.Ct. at 1069–1070.

The court in *Lynch* further discussed the intent of Congress in passing the automatic commitment statute as follows:

> "It is significant to note that in finding that mandatory commitment would not result in 'impairing the rights of the accused' and that it was 'just and reasonable ... that the insanity, once established, should be presumed to continue ... until it can be shown that ... [the accused] has recovered,' the committee report, which was embraced in the reports of the Senate and House committees on the bill, spoke entirely in terms of one who 'has pleaded insanity as a defense to a crime.' " 369 U.S. at 717, 82 S.Ct. at 1071. (Emphasis added.)

We agree with the Supreme Court's statement that the criminal defendant who chooses to claim mental irresponsibility as a defense is in a very different position than one who does not assert that defense. In our view, the fact that a defendant asserts the defense of mental disease or defect is of itself sufficient to authorize commitment automatically upon acquittal by reason of mental disease or defect. By pleading an insanity defense, the defendant admits not only mental irresponsibility, but also the commission of the act upon which prosecution is based.[2] *People v. Chavez*, 629 P.2d 1040, 1047 (Colo.1981); *Leick v. People*, 136 Colo. 535, 322 P.2d 674, 681 (1958), *cert. denied* 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958); *State v. Quigley*, 135 Me. 435, 199 A. 269, 271 (1938); *Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124, 128 (1978); *People ex rel. Henig v. Comm'r of Mental Hygiene*, 43 N.Y.2d 334, 401 N.Y.S.2d 462, 464, 372 N.E.2d 304, 306 (1977); *State v. Bowser*, 214 N.C. 249, 199 S.E. 31, 34 (1938); *State v. Page*, 104 R.I. 323, 244 A.2d 258, 264 (1968); *Lewis v. State*, 57 Wis.2d 469, 204 N.W.2d 527, 529 (1973); *see also People v. Pollard*, 176 Cal. Rptr. 726, 729 (Cal.App.1981); *People v. Dumas*, 51 Misc.2d 929, 274 N.Y.S.2d 764, 772 (N.Y.Sup.Ct.1966); *In re Harris*, 94 Wash.2d 430, 617 P.2d 739, 742 n. 3 (1980).

A defendant's assertion of the defense of mental disease or defect, and his

---

**2.** The admission is, however, generally recognized only in connection with an acquittal by reason of mental disease or defect. The assertion of an insanity defense cannot be used to prove that the defendant committed the *actus reus* and is thereby guilty of the crime, where he is found not to have been insane at the time of the offense. *See State v. Arthur*, 160 N.W.2d 470, 473 (Iowa 1968); *People v. Martin*, 386 Mich. 407, 192 N.W.2d 215, 225 (1971), *cert. denied* 408 U.S. 929, 92 S.Ct. 2505, 33 L.Ed.2d 342 (1972). However, an acquittal by reason of mental disease or defect assumes of necessity that the defendant committed the *actus reus*, since otherwise he would be entitled to release, being not guilty. *Rucker v. United States*, 280 F.2d 623, 625 (D.C.Cir.1960); *State v. Page*, 104 R.I. 323, 244 A.2d 258 (1968); *see Morris v. State*, 11 Md.App. 18, 272 A.2d 663, 666 (1971).

acquittal on that basis, thus establishes that the defendant committed an otherwise criminal act while suffering from a mental disease or defect. Additionally, once it has thus been established that the acquittee was dangerously mentally ill, a presumption arises that the defendant continues to suffer from that condition until he is able to prove otherwise. *Lynch v. Overholzer,* 369 U.S. at 717, 82 S.Ct. at 1070–1071; *Ex parte Slayback,* 209 Cal. 480, 288 P. 769, 771 (1930); *People v. Jones,* 174 Cal.Rptr. 656, 659 (Cal.App.1981); *People v. Chavez,* 629 P.2d 1040, 1048 (Colo.1981); *Mills v. State,* 256 A.2d 752, 755 (Del.1969); *Clark v. State,* 245 Ga. 629, 266 S.E.2d 466, 476–77 (1980); *State v. Allan,* 166 N.W.2d 752, 758 (Iowa 1969); *Ex parte Clark,* 86 Kan. 539, 121 P. 492, 495 (1912); *Barnes v. Behan,* 80 S.D. 370, 124 N.W.2d 179, 181 (1963); *Fortune v. Reshetylo,* 33 Ohio St.2d 22, 294 N.E.2d 880, 881 (1973); *State ex rel. Thompson v. Snell,* 46 Wash. 327, 89 P. 931, 933 (1907); *see also Application of Jones,* 228 Kan. 90, 612 P.2d 1211 (1980). Automatic commitment of an acquittee under such circumstances is therefore not based upon the unacceptable standard that there is only a reasonable doubt as to the acquittee's sanity, but rather upon his own admission of dangerous mental illness. The standard of proof called for in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), is thus more than met when the accused's acquittal is based upon his own assertion of the defense of mental disease or defect.

The appellants argue that the pronouncements of the United States Supreme Court in *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), and *Baxtrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), require a different result in this case. However, we find those cases to be inapposite. In *Vitek* and *Baxtrom,* prison inmates were transferred to mental institutions without a prior hearing or judicial determination that they were suffering from a mental disease or defect. In those cases, the Supreme Court held that commitment to a mental institution is a deprivation of rights for prison inmates, just as it is for any other person, and that commitment must be premised upon a judicial determination following an adversarial hearing that the inmate suffers from a mental disease or defect. Such situations, however, are quite different from that of an accused who in a judicial proceeding admits the fact of dangerous mental illness by successfully asserting the defense of mental disease or defect. In the latter case, the accused obtains his hearing and judicial determination on the question of his mental condition when the judge or jury accepts his tendered defense of mental disease or defect. *Vitek* and *Baxtrom* are therefore clearly distinguishable.

Similarly, *Jackson v. Indiana, supra,* is not on point. In that case the defendant was adjudged to be incompetent to stand trial and was committed to a mental institution until certified to be sane. There was no finding that the defendant fell within "any of the articulated bases for exercise of Indiana's power of indefinite commitment," including dangerousness to self and others. The court in *Jackson* held that:

"[A] person charged by a State with a criminal offense who is committed *solely* on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." 406 U.S. at 738, 92 S.Ct. at 1858. (emphasis added).

Clearly the person who is committed because he admits that he has engaged in conduct which would be criminal but for his lack of sanity stands in a different position than the defendant who is committed *solely* on his mental incapacity to proceed to trial. In the former case, the acquittee has in fact received the process due him through judicial acceptance of his admission. In the latter case, the dangerousness of the defendant found incompetent to stand trial has yet to be established. *Jackson* is therefore not controlling.

The appellants also assert that they are denied equal protection of the law in that they were denied a hearing on the question of their sanity while persons involuntarily committed under civil commitment procedures are accorded such protection. See I.C. § 66–329. In view of our discussion above, however, we think it is clear that an accused who successfully asserts the defense of mental disease or defect is not denied his right to a hearing and judicial determination on the question of his mental condition in that those rights are accorded him at the time his defense of mental disease or defect is tendered and accepted. The fact that two separate statutes govern the recognition of those rights, *i.e.*, I.C. § 18–214 and I.C. § 66–329, does not deny equal protection, but rather simply reflects differing factual settings under which those rights are equally recognized.

We therefore hold that an accused who asserts the defense of mental disease or defect, and is acquitted on that basis, may be automatically committed to a mental institution without further hearing; that such automatic commitment does not violate the acquittee's rights to due process or equal protection because his dangerous mental condition has been established by his own admission; and that the committed acquittee thereafter bears the burden of establishing his right to release by showing, pursuant to authorized procedures, that he is no longer dangerously insane.

### III

As a final matter, since confinement to a mental institution may not constitutionally continue after the basis for confinement no longer exists, *O'Connor v. Donaldson,* 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975), we must determine whether the release provisions of I.C. § 18–214 provide the appellants with adequate opportunity to rebut the presumption that their dangerous mental condition continues. It is generally held that a person acquitted of a crime by reason of insanity may be held without right to petition for release until a reasonable time has elapsed

for the detaining authorities to evaluate the committed person's mental condition. *E.g. People v. Jones,* 174 Cal.Rptr. 656 (1981); *People v. Chavez,* 629 P.2d 1040, 1049–50 (Colo.1981); *Clark v. State,* 245 Ga. 629, 266 S.E.2d 466, 476–77 (1980); see also *Bolton v. Harris,* 395 F.2d 642, 651 (D.C.Cir.1968). I.C. § 18–214(5) defines the right of a person committed under I.C. § 18–214(1) to make application for release. In particular, it provides the following:

> "[N]o such application by a committed person need be considered until he has been confined for a period of not less than six (6) months from the date of the order of commitment, and if the determination of the court be adverse to the application, such person shall not be permitted to file a further application until one (1) year has elapsed from the date of any preceding hearing on an application for his release or discharge."

Thus, the question is whether such limitation on the right to petition for release is reasonable.

In *People v. Chavez, supra,* the Colorado Supreme Court upheld a statute identical to I.C. § 18–214(5). Both statutes were adopted from Model Penal Code § 4.08(5). The court in *Chavez* pointed out that:

> "[T]he commentators [to the Model Penal Code] also state that a defendant's release application is 'limited by what is thought to be the period of time necessary to observe him initially (six months) and by the interval probably necessary for a significant change in his condition to occur after any application has been denied (one year).' Model Penal Code § 4.08, comment at 200–01 (tent. draft no. 4, 1955)." 629 P.2d at 1049–50 n. 16.

In upholding the release provisions, the court in *Chavez* further stated the following:

> "In establishing a period of six months during which the defendant is not entitled to a release hearing as a matter of right, the General Assembly undoubtedly considered this period as necessary for adequate observation. Given the uncertainties and variables of psychiatric diag-

nosis and prognosis, we cannot say that the legislative choice of a six month period of initial commitment violates due process. [Citations omitted.] In the absence of a showing that the time fixed is unreasonable in length and unrelated to purpose—and no such showing was made in this case—we defer to the legislature's decision in this matter." 629 P.2d at 1049–50.

■ It was within the province of the legislature to establish reasonable time limits under I.C. § 18–214(5) in order to ensure that a patient could be released without endangering himself or others. As was the case in *Chavez*, we do not think the record before us indicates any arbitrary or unreasonable action on the part of our legislature in establishing the time periods within which a committed person may apply for release. Consequently, we will not disturb the decision of the legislature on this matter.

■ Appellants also argue that the release procedures of I.C. § 18–214 deny them equal protection of the law as compared to the release procedures provided to those persons involuntarily committed under I.C. § 66–329. I.C. § 66–343 sets forth the right of a person involuntarily committed pursuant to I.C. § 66–329 to petition for review of his commitment. *Glasco v. Brassard,* 94 Idaho 162, 164, 483 P.2d 924, 926 (1971). That section serves the same function as does I.C. § 18–214(5) for those persons committed pursuant to I.C. § 18–214(1). I.C. § 66–343 states the following:

"66–343. PETITION FOR REEXAMINATION OF ORDER OF COMMITMENT.—All patients committed pursuant to section 66–329, Idaho Code, shall be entitled to a reexamination of the order for or conditions of his commitment on his own petition, or that of his legal guardian, parent, spouse, relative, attorney or friend, to the district court of the county in which the patient was committed or is found. Within three (3) years of

the effective date [July 1, 1981] of this act,[3] the department shall petition for the reexamination of all patients committed pursuant to section 66–329, Idaho Code, prior to the effective date of this act. Upon receipt of the petition the court shall determine whether the conditions justifying involuntary care and treatment continue to exist *except that such proceedings shall not be required to be conducted if the petition is filed sooner than four (4) months after the issuance of the order of commitment or sooner than one (1) year after the filing of a previous petition under this section."* (Emphasis added.)

As can be seen, the only real difference between I.C. § 66–343 and I.C. § 18–214(5) in regard to the right of a patient to personally petition for release is that initial review is available under I.C. § 66–343 after four, rather than after six months. The provisions for subsequent applications only after one year are the same, and both procedures also require that the applications be made to the court. I.C. § 66–343 also requires the director of health and welfare to petition the court for reexamination of an involuntary patient's commitment at least once in the three years following July 1, 1981. While I.C. § 18–214 does not contain such a provision, it does, as discussed below, place a continuing duty on the director to petition for the patient's release *at any time* that it appears that the patient may be discharged without danger to himself or others.

Under I.C. § 66–337(a), a person involuntarily committed under I.C. § 66–329 must also be examined by the director or his designee at least once by the end of the first ninety days of commitment, and each 120 days thereafter, to determine if he is eligible for release. I.C. § 66–337(b) requires that "the commitment of an involuntary patient shall be terminated if the patient is no longer mentally ill or is no longer likely to injure himself or others . . . ." In

---

**3.** Reference to "this act" is to a 1981 amendment adding the requirement that the department petition for release of all patients within

three years. 1981 Idaho Sess.Laws, ch. 114, § 31.

comparison, I.C. § 18–214(2) requires that "[i]f the director of the department of health and welfare is of the view that a person committed to his custody pursuant to paragraph (1) of this section may be discharged or released on condition without danger to himself or others, he *shall* make application for the discharge or release of such person in a report to the court . . . ." (Emphasis added.) While I.C. § 18–214(2) does not specifically provide for examinations at designated intervals, it does in effect place the director of health and welfare under a continuing obligation to monitor the committed person and petition for release *at any time* the director thinks such is warranted. Such continuing obligation upon the director under I.C. § 18–214(2) to monitor the patient and to petition the court for release is at least equivalent to the provisions of I.C. § 66–327, except for the fact that specific examinations are required under I.C. § 66–327.

We do not believe that the minor differences between the above discussed provisions for release are unreasonable with regard to appellants' equal protection claims. There is a substantial difference between the situations of those persons committed because of acquittal on the basis of mental disease or defect, and those otherwise involuntarily committed. That difference was succinctly pointed out by the Supreme Court of Maine in *Chase v. Kearns,* 278 A.2d 132, 138 (Me.1971):

> "[T]he finding . . . that a defendant, because of his mental disease or defect, shall be held blameless for an act otherwise subject to criminal sanctions puts such a defendant into an exceptional class. The special interest which the public has acquired in the confinement and release of people in this exceptional class results from the fact that there has been a judicial determination that they have already endangered the public safety and their own as a result of their mental conditions as distinguished from people civilly committed because of only potential danger."

In view of the fact that the differences between the above discussed release proce-

dures are minor, and that the state is reasonably entitled to take greater precaution in releasing persons judicially determined to have already endangered the public safety than may be appropriate for persons committed under I.C. § 66–329, we conclude that appellants have not been denied equal protection of the law. The appellants' arguments fail to demonstrate that they are entitled to release, and therefore the order of the district court quashing the appellants' writs of *habeas corpus* is affirmed.

DONALDSON and SHEPARD, JJ., concur.

McFADDEN, J., concurs in the result.

BISTLINE, Justice, concurring in the result.

Because I believe that there is much in the Court's opinion in this case and the related cases argued contemporaneously, *Carter v. State,* 103 Idaho 701, 652 P.2d 649, and *State v. Russell,* 103 Idaho 699, 652 P.2d 203, which is apparently in conflict with the Court's recent opinion in *True v. State,* 103 Idaho 151, 645 P.2d 891, I am unable to join the Court's opinion, being satisfied only that the result reached therein is correct.