681 P.2d 994

**Margaret STONEBERG,
Petitioner-Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 14662.**

Supreme Court of Idaho.

May 4, 1984.

Charles Johnson, III, Idaho Legal Aid Services Project, Johnson & Olson, Chartered, Pocatello, for petitioner-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for respondent.

DONALDSON, Chief Justice.

Today we are asked to decide whether an indefinite commitment pursuant to I.C. § 18–214, denies criminal defendants, acquitted of a crime by reason of insanity, their rights to due process or equal protection of the law. We find no constitutional violation in a commitment pursuant to I.C. § 18–214, and thus, we affirm the order of the district court quashing appellant's writ of habeas corpus.

On or about March 16, 1981, Appellant Margaret Stoneberg was charged with disturbing the peace in violation of I.C. § 18–6409.[1] Disturbing the peace is a misdemeanor violation which is subject to a maximum imprisonment of six months in the county jail. *See* I.C. § 18–113.

The magistrate division of the district court, acquitted appellant of this charge on the grounds that appellant was suffering from a mental disease or defect which excluded appellant's responsibility for the criminal offense. Pursuant to I.C. § 18–214,[2] appellant was automatically commit-

---

1. "18–6409. **Disturbing the peace.**—Every person who maliciously and wilfully disturbs the peace or quiet of any neighborhood, family or person, by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or fires any gun or pistol, or uses any vulgar, profane or indecent language within the presence or hearing of women or children, in a loud and boisterous manner, is guilty of a misdemeanor."

2. "18–214. **Commitment of acquitted defendant—Conditional release—Revocation of release within five years.**—(1) When a defendant is acquitted on the ground of mental disease or defect excluding responsibility, the court shall order him to be committed to the custody of the director of the department of health and welfare to be placed in an appropriate institution for custody, care and treatment.

"(2) If the director of the department of health and welfare is of the view that a person

ted to the custody and care of the Idaho State Department of Health and Welfare. Appellant has been confined since then at the State Hospital South, longer than she could have been incarcerated for a conviction of the same offense.

On January 21, 1982, appellant filed a petition for writ of habeas corpus. The writ was issued on that date and a hearing was held on February 16, 1982. At the hearing, appellant contended that she could not be held at State Hospital South longer than she could have been incarcerated had she been convicted, without an additional civil commitment hearing. The district court quashed the writ of habeas corpus,

and appellant filed this appeal from the district court's order.

## I.

### Due Process

We first address whether I.C. § 18–214 deprives appellant of due process of law, because as an acquittee she can be held without further proceedings, longer than a person similarly convicted.[3] When analyzing the dictates of procedural due process, this Court has adopted the two-step analysis established by the United States Supreme Court[4] which requires a court to

committed to his custody, pursuant to paragraph (1) of this section, may be discharged or released on condition without danger to himself or to others, he shall make application for the discharge or release of such person in a report to the court by which such person was committed and shall transmit a copy of such application and report to the prosecuting attorney of the county from which the defendant was committed. The court shall thereupon appoint at least two (2) qualified psychiatrists to examine such person and to report within sixty (60) days, or such longer period as the court determines to be necessary for the purpose, their opinion as to his mental condition. To facilitate such examination and the proceedings thereon, the court may cause such person to be confined in any institution located near the place where the court sits, which may hereafter be designated by the director of the department of health and welfare as suitable for the temporary detention of irresponsible persons.

"(3) If the court is satisfied by the report filed pursuant to paragraph (2) of this section and such testimony of the reporting psychiatrists as the court deems necessary that the committed person may be discharged or released on condition without danger to himself or others, the court shall order his discharge or his release on such conditions as the court determines to be necessary. If the court is not so satisfied, it shall promptly order a hearing to determine whether such person may safely be discharged or released. Any such hearing shall be deemed a civil proceeding and the burden shall be upon the committed person to prove that he may safely be discharged or released. According to the determination of the court upon the hearing, the committed person shall thereupon be discharged or released on such conditions as the court determines to be necessary, or shall be recommitted to the custody of the director of the department of health and welfare, subject to discharge or release only in accordance with the procedure prescribed above for a first hearing.

"(4) If, within five (5) years after the conditional release of a committed person, the court shall determine, after hearing evidence, that the conditions of release have not been fulfilled and that for the safety of such person or for the safety of others his conditional release should be revoked, the court shall forthwith order him to be recommitted to the custody of the director of the department of health and welfare subject to discharge or release only in accordance with the procedure prescribed above for a first hearing.

"(5) A committed person may make application for his discharge or release to the court by which he was committed, and the procedure to be followed upon such application shall be the same as that prescribed above in the case of an application by the director of the department of health and welfare. However, no such application by a committed person need be considered until he has been confined for a period of not less than six (6) months from the date of the order of commitment, and if the determination of the court be adverse to the application, such person shall not be permitted to file a further application until one (1) year has elapsed from the date of any preceding hearing on an application for his release or discharge.

"(6) If a defendant escapes from custody during his confinement, the director shall immediately notify the court from which committed, the prosecuting attorney and the sheriff of the county from which committed. The court shall forthwith issue an order authorizing any health officer, peace officer, or the director of the institution from which the defendant escaped, to take the defendant into custody and immediately return him to his place of confinement."

3. Although I.C. § 18–214 was repealed by the 1982 legislature, 1982 Sess.Laws, ch. 368 § 1, it is controlling in the present case.

4. *See Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Board of Regents v.*

determine (1) whether the specific interest threatened by government action is within the contemplation of the liberty or property language of the Fourteenth Amendment; and, (2) assuming the existence of such an interest, what process is due. *Application of True*, 103 Idaho 151, 154, 645 P.2d 891, 894 (1982). In *True*, we noted that "the approach is utilitarian, requiring a preliminary showing that the asserted interest is a cognizable interest under the Fourteenth Amendment, and then requiring a balancing of the relative interests of the individual and the state." *Id.* at 155, 645 P.2d at 895.

█ Thus, our first inquiry is whether appellant's interest is cognizable under the Fourteenth Amendment. Appellant's interest is protected by the Fourteenth Amendment in view of our previous holding that an "involuntary commitment to a mental institution constitutes a severe curtailment of an individual's liberty which invokes the constitutional protection of procedural due process." *Application of Downing*, 103 Idaho 689, 694, 652 P.2d 193, 198 (1982).

█ Our next inquiry is whether a commitment pursuant to I.C. § 18–214, which impliedly authorizes the indefinite confinement of one acquitted of a crime by reason of mental disease or defect, comports with due process. Specifically, appellant asserts that an acquittee may not be confined longer than she could have been incarcerated if criminally convicted.

We do not believe that an acquittee's potential criminal sentence is relevant to the length and purpose of an acquittee's commitment. This precise issue was addressed by the United States Supreme Court in *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). The *Jones* Court upheld the constitutionality of the indefinite confinement of a criminal defendant acquitted of a crime by reason of insanity until such time as the defendant has regained his sanity or is no longer a danger to himself or society. The

*Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

United States Supreme Court cogently stated the following:

"The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous.... And because it is impossible to predict how long it will take for any given individual to recover—or indeed whether he will ever recover—Congress has chosen, as it has with respect to civil commitment, to leave the length of commitment indeterminate, subject to periodic review of the patient's suitability for release.

"In light of the congressional purposes underlying commitment of insanity acquittees, we think petitioner clearly errs in contending that an acquittee's hypothetical maximum sentence provides the constitutional limit for his commitment. A particular sentence of incarceration is chosen to reflect society's view of the proper response to commission of a particular criminal offense, based on a variety of considerations such as retribution, deterrence, and rehabilitation.... The State may punish a person convicted of a crime even if satisfied that he is unlikely to commit further crimes.

"Different considerations underlie commitment of an insanity acquittee." *Jones, supra*, at ——, 103 S.Ct. at 3051–3052 (citations omitted).

In sum, the *Jones* Court stated that the length of the acquittee's hypothetical criminal sentence is irrelevant to the purpose of an acquittee's commitment. *Jones, supra*, at ——, 103 S.Ct. at 3052. We are in full accord with the United States Supreme Court, and therefore, we hold that I.C. § 18–214 does not deprive appellant of due process of law although appellant may be confined longer than she could have been criminally incarcerated.[5]

5. It is important to note that in the *Jones* decision, pursuant to the D.C.Code, the burden of

■ Appellant further contends that the release provisions of I.C. § 18–214 are inadequate because they do not provide for an automatic judicial review at a specified time to determine whether an acquittee is eligible for release.[6] While the District of Columbia statutes examined in the *Jones* case, had such a provision,[7] we do not read the *Jones* decision as requiring an automatic judicial hearing. Rather, the *Jones* Court addressed the necessity of *periodic review* of the patient's suitability for release. *Jones, supra.* This emphasis on periodic review, is consistent with our recent statement in *Downing* wherein we held that "confinement to a mental institution may not constitutionally continue after the basis for confinement no longer exists ...." *Downing, supra,* 103 Idaho at 697, 652 P.2d at 200 (citation omitted). While we do not agree that an automatic hearing is essential to the dictates of procedural due process, we do believe that a periodic review is critical.

I.C. § 18–214 contains the following provisions for the periodic review of an acquittee's suitability for release. First, I.C. § 18–214(2) requires the director of the department of health and welfare to make an application for the discharge or release of an acquittee if the director believes that an acquittee may be discharged or released on condition without danger to himself or others. "While I.C. § 18–214(2) does not specifically provide for examinations at designated intervals, it does in effect place the director of health and welfare under a continuing obligation to monitor the committed person and petition for release *at any time* the director thinks such is warranted." *Downing, supra,* at 699, 652 P.2d at 203 (emphasis in original).

This provision alone may be insufficient for adequate procedural due process protection. However, any possible bias which may rest with the director of the department of health and welfare in failing to make an application on behalf of the appel-

proof rested on the defendant to prove his insanity by a preponderance of the evidence. The majority in *Jones* suggests that on this basis, an automatic commitment is justified and is sufficient to raise an inference of continued mental illness sufficient for continued confinement. *Jones, supra,* at ——, 103 S.Ct. at 3052.

Under I.C. § 18–209 (since repealed), a mental disease or defect excluding responsibility is an affirmative defense. If evidence is presented and "substantial proof" has been submitted by the defendant sufficient to put his sanity in issue, *State v. Myers,* 94 Idaho 570, 574, 494 P.2d 574, 578 (1972), the burden shifts to the State to prove the defendant's sanity beyond a reasonable doubt. *State v. Gratiot,* 104 Idaho 782, 783, 663 P.2d 1084, 1085 (1983); *State v. Myers,* 94 Idaho 570, 573, 494 P.2d 574, 577.

We have further stated that the "approach chosen in this jurisdiction is the most protective of the defendant, and the least rigorous on him in terms of proof." *State v. Myers, supra,* at 573, 494 P.2d at 577. We believe this standard is a sufficient foundation for this Court to uphold the automatic commitment and presumption of continued mental illness in this case. *See Downing, supra,* 103 Idaho at 694–696, 652 P.2d 198–200.

The *Jones* Court further held that an insanity acquittee may be automatically committed under a less rigorous standard of proof—"preponderance of the evidence" than used in an involuntary civil commitment—"clear and convincing evidence." *Jones, supra,* 463 U.S. at ——,

103 S.Ct. at 3051. Because appellant does not raise any issue on this matter, we express no opinion on it.

6. While a statutorily mandated automatic hearing may be well advised, we refrain from expressing any view beyond whether the release procedures are constitutionally sound. We must refrain from encroaching upon the legitimate function of the legislature in establishing the above release provision in the absence of a constitutional irregularity.

7. The District of Columbia Code § 24–301(d)(2) provides in relevant part:

"(A) A person confined pursuant to paragraph (1) shall have a hearing, unless waived, within 50 days of his confinement to determine whether he is entitled to release from custody ....

"(B) If the hearing is not waived, the court shall cause notice of the hearing to be served upon the person, his counsel, and the prosecuting attorney and hold the hearing. Within ten days from the date the hearing was begun, the court shall determine the issues and make findings of fact and conclusions of law with respect thereto. The person confined shall have the burden of proof. If the court finds by a preponderance of the evidence that the person confined is entitled to his release from custody, either conditional or unconditional, the court shall enter such order as may appear appropriate."

lant, is eliminated by I.C. § 18–214(5). This provision enables the acquittee himself to make such an application by following the same procedures that are prescribed when an application is made by the director of health and welfare.[8]

Whether the application is made by the director of health and welfare, or by the acquittee himself, the application is submitted to the court which originally committed the acquittee. The committing court retains the authority to release the acquittee on the basis of a report filed pursuant to I.C. § 18–214(2), or to order a hearing to determine whether the acquittee may safely be released.

We now turn to examine whether these procedures adequately safeguard the interests of the individual and the State. Appellant has an interest in receiving a fair and periodic opportunity to petition for her release. The State has the interests of treating the acquittee's mental illness, protecting society from an acquittee's potential dangerousness and in maintaining an adequate review procedure which is not unduly burdensome to administer. We hold that the procedures available for review and release under I.C. § 18–214 adequately safeguard the interests of both the appellant and the State, and adequately protect appellant's due process rights to receive periodic review of the validity of her confinement.

## II.

### Equal Protection

■ We now turn to discuss whether I.C. § 18–214 violates appellant's equal protection rights by either: (1) the disparity of treatment between a civil committee and a criminal acquittee; or, (2) the possible disparity in the length of confinement of one criminally incarcerated and one criminally acquitted.

Under a similar equal protection challenge, the Colorado Supreme Court, in *People v. Chavez*, 629 P.2d 1040 (Colo.1981), correctly set out the appropriate standard of review.

"In the absence of a suspect classification or an intrusion on a fundamental right, the traditional standard of review requires that the challenged classification 'bear some rational relationship to legitimate state purposes.' ... No suspect classification is involved here. Nor does the automatic commitment requirement implicate a fundamental right. Although a commitment to a mental institution constitutes a significant deprivation of liberty, ... a person found not guilty by reason of insanity enjoys no fundamental right to unrestricted liberty upon that adjudication."

*Chavez, supra,* at 1051–1052 (footnotes and citations omitted).

Appellant's main contention is that persons are committed under I.C. § 18–214 without a present finding of mental illness or dangerousness as required in a civil commitment proceeding. Appellant contends that at some point, and in any event upon the expiration of the maximum criminal sentence available for the conviction of the same offense, appellant must either be released, or receive a hearing on the propriety of her future confinement. Appellant contends that the failure to provide such a hearing constitutes a disparity in the treatment between civil committees and criminal acquittees.

We have previously stated that an accused who asserts the defense of mental disease or defect, and is acquitted on that basis, may be automatically committed without a further hearing. *Downing, supra,* 103 Idaho at 697, 652 P.2d at 200. Thus, there is a disparity in treatment in the initial commitment proceedings of a civil committee and a criminal acquittee.

---

8. While I.C. § 18–214(5) establishes the time periods within which an acquittee may apply for a release, we previously upheld the validity of these time limitations. *Downing, supra,* at 698, 652 P.2d at 202.

However, despite this disparity, we have held that a criminal acquittee is not denied equal protection of the law by the denial of a hearing on the question of their sanity although persons involuntarily committed under civil commitment procedures are accorded such protections. The acquittee's dangerous mental condition is established by his own admission. *Id.* The acquittee receives his hearing and judicial determination on the question of his mental condition when the judge or jury accepts his tendered defense of mental disease or defect. *Id.* We believe the differences in the initial commitment proceedings are rationally related to the legitimate state purpose of avoiding duplicative proceedings.

Having discussed the treatment accorded to a criminal acquittee at the initial commitment stage, we turn now to compare the release provisions of I.C. § 18–214 with the release provisions available to a civil committee under I.C. § 66–329. In this regard, we previously stated that

> "[t]here is a substantial difference between the situations of those persons committed because of acquittal on the basis of mental disease or defect, and those otherwise involuntarily committed. That difference was succinctly pointed out by the Supreme Court of Maine in *Chase v. Kearns,* 278 A.2d 132, 138 (Me. 1971):
>
> > '[T]he finding ... that a defendant, because of his mental disease or defect, shall be held blameless for an act otherwise subject to criminal sanctions puts such a defendant into an exceptional class. The special interest which the public has acquired in the confinement and release of people in this exceptional class results from the fact that there has been a judicial determination that they have already endangered the public safety and their own as a result of their mental conditions as distinguished from people civilly committed because of only potential danger.' "

*Downing, supra,* 103 Idaho at 699, 652 P.2d at 203. In sum, we held that while there were differences in the respective release provisions, they were minor.

The Colorado Supreme Court in *People v. Chavez, supra,* persuasively stated why the differences between the statutory release procedures for a civil commitment versus a criminal commitment are rationally related to a legitimate state purpose.

> "The primary purpose of a civil commitment is to secure such treatment as is suited to the needs of the person under conditions which are as least restrictive of liberty as practicable. *See* sections 27–10–101(1) and 27–10–117(1), C.R.S. 1973. The legislative choice of less restrictive conditions of release (as well as of confinement) for persons civilly committed is a recognition that their illness has not manifested itself in overt criminal conduct inimical to the social order and dangerous to others. In contrast, a defendant adjudicated criminally insane has demonstrated by his conduct, as in this case, a likely illness and corresponding danger more threatening to the safety of others. The more stringent standards of release applicable to the criminally committed defendant reflect the increased risk to the public associated with the release decision and, as in the case of automatic commitment, they are reasonably related to the state's interest in public safety."

*Chavez, supra,* at 1054.

We find this reasoning persuasive. We also believe these differences bear a rational relationship to the legitimate state purpose of taking greater precautions in releasing those judicially determined to have already endangered the public safety than for persons civilly committed under I.C. § 66–329. *Downing, supra,* 103 Idaho at 699, 652 P.2d at 193.

We hold that a commitment pursuant to I.C. § 18–214 does not violate appellant's right to equal protection of the laws in failing to provide a hearing as to the appellant's present mental illness or dangerous-

**526**

ness at the initial states of commitment, or at the expiration of appellant's hypothetical criminal sentence.

Secondly, appellant asserts that it violates equal protection principles to hold an acquittee in confinement for a period longer than one may be criminally incarcerated for the commission of the same offense. While the State has an interest in protecting the public from persons who have previously engaged in criminal conduct, whether they be a convictee or a criminal acquittee, in the case of a criminal acquittee, the State has the additional interest of the care and treatment of the mentally ill. A commitment pursuant to I.C. § 18–214 is indefinite, subject to periodic review, because one acquitted of a crime by reason of mental disease or defect may remain ill for an unpredictable period of time. The relative lengths of confinement serve such different purposes that they cannot be compared for equal protection purposes.

We hold that I.C. § 18–214 does not violate appellant's equal protection rights by impliedly authorizing the confinement of an acquittee for a period of time longer than one may be criminally incarcerated for the same offense.

We have reviewed appellant's other contentions and find them to be without merit.

No attorney fees on appeal.

Costs on appeal to respondents.

SHEPARD, BAKES, BISTLINE, and HUNTLEY, JJ., concur.